## Davis *v.* City of Philadelphia, Trustee, (et al. Appellants).

646

Argued October 7, 1943. Before KELLER, P. J., BALDRIGE, STADTFELD, RHODES, HIRT and KENWORTHEY, JJ. (RENO, J., absent).

*Howard R. Detweiler,* with him *Frank R. Ambler,* for appellants.

*David F. Maxwell,* with him *B. Nathaniel Richter* and *Edmonds, Obermayer & Rebmann,* for appellee.

OPINION BY BALDRIGE, J., December 10, 1943:

This is an appeal in a workmen's compensation case. Claimant's husband, William J. Davis, on February 16, 1939, was removing heavy machinery from a coal mine when a piece of timber, attached to vertical posts across the top of the mine shaft, fell and hit him. The injuries resulted in death the next day. The claimant, who has been pressing her claim for four years, is undoubtedly entitled to an award.

The only question is who is the responsible employer. The immediate problem before us is whether Associated Auctioneers, Inc., hereinafter called "Associated", employed to sell at auction the machinery removed from the coal mine, is liable to pay as the "statutory employer" of decedent under the provisions of sections 203 and 302(b) of the Workmen's Compensation Act of 1915, June 2, P. L. 736.

The essential facts as found are as follows: The accident occurred at the Bear Ridge Colliery, owned by the Estate of Stephen Girard, and leased to the Harleigh-Brookwood Coal Company, who placed the machinery in the mine for its operation. On August 28,

1937, the lessee was declared a bankrupt and Earl D. Straub, superintendent of mining operations, was appointed trustee. Both Straub, as trustee, and the Estate of Stephen Girard, as owner, claimed the machinery in the mine. While this question, eventually decided in favor of the trustee, was being litigated in the Federal Courts, the parties agreed to sell the machinery at public auction. The Associated was employed for that purpose. The fund thus raised was to belong to the successful claimant. The mine had been operated by Morea Coal Company, uninsured, as a sub-lessee of Harleigh-Brookwood Coal Company, but that company was preparing to abandon its lease on February 15, 1939.

Counsel for the owner and Straub, trustee, suggested to Associated that they make arrangements with the Morea Coal Company that certain of its employees remain on the premises to dismantle and bring to the surface the machinery to be sold. That plan was carried into effect and Straub in his individual capacity, not as trustee, owing to his knowledge of all the mine equipment, was employed by Associated to list the machinery to be sold. It was agreed that the bills incurred by Associated for requisite electric power for lights, keeping pumps operating, etc., wages, and other costs of removal, were to be paid out of the fund raised from the sale of machinery. The referee found upon competent and substantial testimony that the sum of $150, estimated costs of compensation insurance, which included coverage for the day of the accident, in addition to the normal commissions and costs, was also to be retained by Associated out of the fund aforesaid.

A number of hearings were had and the case was sent back twice to the compensation authorities for additional testimony. The referee, after the last hearing, found again that Associated was the statutory employer under section 203 of the Workmen's Compensation Act, and held it liable. The board dismissed exceptions filed

and affirmed the referee. The award in favor of claimant against Associated was then sustained by the common pleas. This appeal by Associated and their insurance carrier is from a judgment entered on the award.

Section 203 of the Workmen's Compensation Act of 1915, supra, provides: "An employer who permits the entry upon premises occupied by him or under his control of a laborer or an assistant hired by an employe or contractor, for the performance upon such premises of a part of the employer's regular business entrusted to such employe or contractor, shall be liable to such laborer or assistant in the same manner and to the same extent as to his own employee." [1]

The exact requirements of section 203 have been specifically analyzed by Mr. Justice KEPHART in *McDonald v. Levinson Steel Co.*, 302 Pa. 287, 294, 153 A. 424, as follows: "As thus understood section 203 would read: 'An employer [principal contractor] who permits the entry upon premises occupied by him or under his control of a laborer ...... hired by ...... a contractor [sub contractor], for the performance upon such premises of a part of the employer's [principal contractor's] regular business entrusted to ...... such contractor [sub contractor], shall be liable ...... in the same manner ...... as to his own employee.' "

Admittedly, the burden of proof was on claimant to establish who was the employer of her husband: *Aurand v. Universal Carloading & Distributing Co. et al.*, 131 Pa. Superior Ct. 502, 200 A. 285. We are not unmindful that the relation of statutory employers is purely of statutory origin, forcing liability upon parties not in privity of contract, and the statute cannot be extended to cover situations not fairly within its scope: *Gallivan v. Wark Co.*, 288 Pa. 443, 449, 136 A. 223.

---

[1] Section 203, as amended by the Act of 1937, June 4, P. L. 1552, has been declared unconstitutional by the Supreme Court in *Rich Hill Coal Company v. Bashore*, 334 Pa. 449.

But it must be remembered, also, that section 203 is part of the general Workmen's Compensation Act, which must be liberally construed to effectuate its purpose. The reason behind section 203 is plain. The legislature intended to fix the obligation to pay compensation to injured workmen definitely upon some responsible party: *Qualp v. James Stewart Co.*, 266 Pa. 502, 509, 109 A. 780; *De Nardo et ux. v. Seven Baker Bros.*, 102 Pa. Superior Ct. 347, 156 A. 725.

Appellant earnestly argues that the word "or" in "occupied by ...... or under his control" in section 203 should be interpreted in the conjunctive, rather than disjunctive, thereby making both control and occupancy necessary to the liability of the principal contractor, and that the premises were not occupied by it or under its control within the meaning of that section.

We find no reason to conclude that the legislature intended "or" to be used other than in its ordinary disjunctive sense. Words are to be given their ordinary and obvious plain meaning, unless the intention is clear that a different meaning is required: Statutory Construction Act of 1937, May 28, P. L. 1019, §51, 46 PS §551.

There was sufficient evidence of control or possession of the premises by Associated to make them liable as principal contractor. Straub, acting solely as agent of the Associated, went upon the premises and, being thoroughly familiar with all the machinery in the mine, selected the pieces or parts to be removed, for which he received the sum of $200. Under the arrangements between all parties concerned, Associated was in control of the premises to the extent necessary to remove from the mine the machinery, catalogue it, and expose it for sale. Morea had abandoned its lease February 15, 1939, and had no right of control or interest in the mining premises. It was necessary that the pumps be operated to keep the water from filling the mine so that the re-

moval of the machinery could be accomplished. Associated assumed liability for the payment of its power and light bills; it was in possession of the premises and directed the only work that was being done. Its conduct warranted the conclusion that when Davis was injured he was on the premises under its control.

The appellant contends further that the removal of the machinery was casual and not part of, or in the regular course of, Associated's business within the meaning of section 203. In this connection the referee found upon competent substantial testimony, and his finding was affirmed by the board, "That it was the duty of the Associated Auctioneers, Inc., as a prerequisite to the sale of the mining machinery and equipment to arrange for its removal from the mine to the surface where the said machinery and equipment could be placed on display for the benefit of prospective purchasers." Mr. Kaskey, president and general manager of Associated testified that in regard to bankruptcy sales "we do everything in connection with the advertising, arranging, cataloging, whatever labor there is, selling and supervising the removal of items sold." The testimony of A. N. Rubin, counsel for the trustee in bankruptcy of Harleigh-Brookwood Coal Co., was to the same effect. It may be regarded as more or less common knowledge that auctioneers, especially in bankruptcy sales, take complete charge of removal, cataloging, and display of goods to be disposed of by them. While the removal of machinery from a coal mine may be a comparatively rare occurrence, it is none the less a part of an auctioneer's regular business if done in connection with the sale at auction of the property of a bankrupt. Assuming the employment was casual, it was nevertheless within the accepted category of *regular course of business* of the master, or, as here, principal contractor, as defined in *Sgattone v. Mulholland & Gotwals, Inc. et al.*, 290 Pa. 341, 138 A. 855. There a company was engaged in a building operation which re-

quired the removal of tree stumps by blasting. It borrowed from a sewer contractor an experienced dynamiter, who was killed while working in the building. The court said p. 347; "When the employment is by chance, without fixed duration of time, it may be said to be casual, but, even if so, the master is responsible *if the work was in the regular course of his business, by which is meant during the normal operations which constitute it."* See, also, *Vescio v. Penna. Electric Co.,* 336 Pa. 502, 506, 9 A. 2d 546; *Passarelli v. Monacelli,* 121 Pa. Superior Ct. 32, 36, 183 A. 65; *Booth v. Freer et al.,* 133 Pa. Superior Ct. 594, 3 A. 2d 205.

The court below indicated it felt that Morea was agent rather than a sub-contractor, because he received no compensation for the work of removal of the machinery beyond reimbursement for actual expenses. There was, however, a definite arrangement, for a consideration, entered into between Morea and Associated. This was sufficient, in our estimation, to constitute Morea a "sub-contractor" within the terms of section 203. All that the act by its terms requires in this connection is a sub-contract. It would be a narrow construction indeed to hold that the sub-contract must necessarily involve a pecuniary profit to the sub-contractor, or, in other words, to inquire into the adequacy of the consideration between the parties as a prerequisite to the contractual relationship. See Words & Phrases (Perm. Ed., 1940) Vol. 40, pp. 340, 351.

If Morea be considered as a mere agent to furnish the necessary labor in the removal of the machinery, Associated is equally liable on the theory of direct employment. We prefer, however, to rest our decision upon Associated's liability under section 203.

The judgment of the court below is affirmed.