Lee *v.* McMinn Industries, Inc. (et al., Appellant) et al.

502

Argued September 27, 1950. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*C. A. Whitehouse*, with him *S. H. Torchia, Ralph H. Behney* and *Charles J. Margiotti*, Attorney General, for State Workmen's Insurance Fund, appellant.

*Milton J. Kolansky*, for Anna Lee, appellee.

*Charles G. Webb*, with him *Owlett, Webb & Cox*, for Hinaman and Pennsylvania Manufacturers Casualty Insurance Co., appellees.

OPINION BY RENO, J., November 14, 1950:

· Allen Lee was killed in the course of his employment on August 18, 1944. On November 15, 1944, his widow filed two petitions for workmen's compensation: one against McMinn Industries, Inc., Lee's principal or immediate employer, whose insurance carrier was State Workmen's Insurance Fund; the other against A. W. Hinaman, Lee's alleged statutory employer, whose carrier was Pennsylvania Manufacturers Casualty Insurance Company. Liability was admitted, and this now hoary litigation has been waged exclusively between the defendants and their respective carriers. Meanwhile the widow has not received the compensation to which she is clearly entitled; a sad commentary upon a humanitarian system of law which was designed to secure speedy determination of responsibility and provide an immediate cushion for the devastating impact of industrial accidents upon dependents of workmen.[1]

The referee, finding adequate facts, held McMinn solely liable. The board held that Lee was killed in the course of his employment for McMinn on Hinaman's premises, and that McMinn was primarily liable and Hinaman secondarily. Its order required McMinn to pay the compensation and should it default Hinaman, as statutory employer, would be obliged to pay. The court below held McMinn solely responsible and relieved Hinaman from all liability. Three appeals were taken from as many separate judgments of the court

---

[1] We encountered recently a similar situation in *Karoly v. Jeddo-Highland Coal Co.*, 166 Pa. Superior Ct. 571, 73 A. 2d 214, decided May 10, 1950. Where liability is admitted there should be no undue delay in providing payment. Payment of interest does not always relieve the hardship wrought by withholding the principal. It would seem that legislation could provide for payment pending the outcome of controversies between insurance carriers.

below by McMinn's carrier.[2] The appeals were consolidated by this Court, and the decisions will be embraced in one opinion.

Hinaman had three contracts with the Department of Highways for the construction of roads in Tioga County, referred to as the Wellsboro, Elkland and Knoxville contracts. He sublet the laying of the surfacing bituminous concrete on all the roads to McMinn at a stipulated price per ton. Under their agreement McMinn's employes, excluding its plant and trucking force, but including Lee, were paid by Hinaman, who deducted from the gross wages earned at the rates established by McMinn the employe's social security and income taxes. Hinaman carried McMinn's employes on his pay roll, and paid compensation insurance premiums upon them. In their periodic settlements, Hinaman deducted from the sum due McMinn the wages and the premiums paid by him, so that ultimately McMinn paid the insurance premiums covering compensation for its employes.

Pursuant to the agreement Hinaman loaned McMinn a ten-ton roller which McMinn used in his part of the work. Upon the completion of the Wellsboro contract McMinn's president, accompanied by Lee, moved the roller to the Elkland job, during which movement Lee was killed. The accident occurred on that stretch of the highway where Hinaman had made excavations in the shoulders and was laying drain pipes. Although the road was under construction it "was open to traffic

---

[2] The appeals relate to the following judgments of the court below: (1) No. 2 March Term, 1950, from the court's decision on the appeal from the board by State Workmen's Insurance Fund; (2) No. 3 March Term, 1950, a similar appeal by the same party; (3) No. 4 March Term, 1950, appeal from board by Hinaman and Pennsylvania Manufacturers Casualty Insurance Company. The court below entered judgment against the Fund in the first two cases and for Hinaman and his carrier in the last case.

generally and was a public highway."[3] The place of the accident was 5-½ miles from the point where Mc-Minn was to begin its part of the work on the Elkland job.

Lee was McMinn's employe, hired by it, subject to its order, and dischargeable by it. At the moment of the accident he was exclusively under McMinn's orders. The roller was used only by McMinn for the performance of its work, and at the time of the accident was being moved from one part of McMinn's job to another part. It was McMinn's duty, not Hinaman's, to move the roller from place to place. The accident occurred in the interval between McMinn's surfacing jobs, between the completion of the Wellsboro work and the beginning of the Elkland job, and Lee was killed at a time when neither he nor McMinn was actively engaged in surfacing the highway. He was working for McMinn between the several jobs, working with a McMinn officer who was performing a duty resting solely upon McMinn.

It follows that McMinn is liable for Lee's compensation. McMinn was his employer, and Lee was actually engaged in the furtherance of the business of his employer.[4] Payment of Lee's wages by Hinaman's checks is immaterial, for McMinn ultimately reimbursed Hinaman. Cf. *Atherholt v. William Stoddart Co.*, 286 Pa. 278, 133 A. 504; *Lecker v. Valentine*, 286 Pa. 418, 133 A. 792. Hinaman's payment of compensation insurance premiums is not controlling, for McMinn reimbursed him. The payments did not change Lee's status as an employe of McMinn. The net result, so far as Lee was effected, was that he had, in the event of an accident, two funds to which he or his dependents could look

---

[3] Stipulation of counsel entered at referee's hearing.

[4] Pennsylvania Workmen's Compensation Act of June 21, 1939, P. L. 520, §301, 77 P.S. §411.

for compensation, provided that he was injured or killed while engaged in the course of his employment for Mc-Minn *upon the premises of Hinaman.*[5] The vital issue, as between the employers and their carriers, is whether Lee was killed on Hinaman's premises.

Whether Hinaman followed the prescribed procedure to protect himself against claims for compensation by McMinn's employes, in accordance with the Pennsylvania Workmen's Compensation Act of June 21, 1939, P. L. 520, §302(b), 77 P.S. §462, need not be discussed.[6] Whether he did or not, the crucial question is: Did Hinaman permit Lee to enter upon premises occupied by him for the performance of that part of Hinaman's business which had been entrusted to Mc-Minn, within the meaning of §302(b), supra, and §203, 77 P.S. §52?[7]

---

[5] Cf. *Gallivan v. Wark Co.*, 288 Pa. 443, 449, 136 A. 223; *Byrne v. Hitner's Sons Co.*, 290 Pa. 225, 232, 138 A. 826; *Robinson v. Atlantic Elevator Co.*, 298 Pa. 549, 551, 148 A. 847. And see *Swartz v. Conradis*, 298 Pa. 343, 148 A. 529.

[6] Act, §302(b), part: "After December thirty-first, one thousand nine hundred and fifteen, an employer who permits the entry, upon premises occupied by him or under his control, of a laborer or an assistant hired by an employe or contractor, for the performance upon such premises of a part of the employer's regular business entrusted to that employe or contractor, shall be conclusively presumed to have agreed to pay to such laborer or assistant compensation in accordance with the provisions of article three, unless the employer shall post in a conspicuous place, upon the premises where the laborer's or assistant's work is done, a notice of his intention not to pay such compensation, . . . And in such cases, where article three binds such employer and such laborer or assistant, it shall not be in effect between the intermediate employer or contractor and such laborer or assistant, unless otherwise expressly agreed."

[7] Act, §203: "An employer who permits the entry upon premises occupied by him or under his control of a laborer or an assistant hired by an employe or contractor, for the performance upon such premises of a part of the employer's regular business en-

In the decision of this question, account must be taken of the realities of the situation, and it cannot be resolved by attributing an artificial or theoretical meaning to the word "premises". In highway construction, work of various kinds and of different subcontractors may be in variant stages of completion, and performance may extend over a distance of several miles, excavating here, levelling there, and surfacing elsewhere. In a sense the whole area of the operations might be said to constitute the contractor's premises. Yet we expressly rejected that broad and superficial concept, and held that the entire length and breadth of highway construction work cannot be regarded as the contractor's premises, especially where, as here, the highway remains open to traffic. *Kattera v. Burrell Const. & Sup. Co.*, 152 Pa. Superior Ct. 591, 33 A. 2d 498. So here, while the situs of the accident was within the area of Hinaman's excavation activities, Lee did not enter that part of the operation for the purpose of assisting in the excavation, for that part of Hinaman's business had not been entrusted to his employer McMinn. He was not an excavation employe. Lee with his employer's representative entered the portion of the highway on which Hinaman was working only to pass over it, and deliver the roller to the point at which McMinn was to begin its part of the work on the Elkland contract. So far as McMinn and Lee were concerned, Hinaman's premises, at that moment, were 5-1/2 miles away from the point of the accident, at Elkland, where McMinn was to perform the surfacing job. It was a pure coincidence, a concurrence of event and place without causal nexus, that Lee was killed in a section of the highway where Hinaman was performing his part of the work.

---

trusted to such employe or contractor, shall be liable to such laborer or assistant in the same manner and to the same extent as to his own employe."

The premises of an immediate employer embraces the property used by him in connection with the actual place of work, where the employer carries on the business in which the employe is engaged. *Meucci v. Gallatin Coal Co.,* 279 Pa. 184, 123 A. 766. The premises of a statutory employer of the species here involved, a principal contractor who has sublet part of his contract to a subcontractor, is the place occupied or controlled by him to which the subcontractor and the subcontractor's employes have access for the performance of that part of the contractor's business which has been entrusted to the subcontractor or his employes. Lee was killed upon a part of Hinaman's premises in which at that time McMinn was not working and had no present obligation to work, and Hinaman has no responsibility, primary or secondary, in respect of Lee.

The board found as a fact that the point on the highway where Lee was killed was Hinaman's premises. We are not bound by the finding. Where, as here, the facts are stipulated and therefore undisputed, the interpretation and construction of the Act is a question of law that may be reviewed by the Courts, even though an erroneous conclusion of law has been labelled a finding of fact by the board. *Wahs v. Wolf,* 157 Pa. Superior Ct. 181, 42 A. 2d 166. Whether under an ascertained state of facts the place where an accident happened was a part of defendant's premises, within the meaning of the Act, is a question of law, subject to review on appeal by the court. *Dougherty v. Bernstein & Son,* 160 Pa. Superior Ct. 587, 52 A. 2d 370; *Kattera v. Burrell Const. & Sup. Co.,* supra.

Judgments affirmed.