Jerry GIRARDI, Appellant,

v.

LIPSETT, INC. (Andershonis, Inc., Third-Party Defendant).

No. 12999.

United States Court of Appeals
Third Circuit.

Argued Jan. 19, 1960.

Decided March 7, 1960.

Rehearing Denied March 31, 1960.

Seymour I. Toll, Philadelphia, Pa. (B. Nathaniel Richter, Charles A. Lord, Richter, Lord & Levy, Philadelphia, Pa., on the brief), for appellant.

Lynn L. Detweiler Philadelphia, Pa. (Swartz, Campbell & Henry, Philadelphia, Pa., on the brief), for Lipsett, Inc.

George P. Williams, 3d, Philadelphia, Pa. (Donald J. Farage, Orr, Williams & Baxter, Philadelphia, Pa., on the brief), for Andershonis, Inc.

Before GOODRICH, McLAUGHLIN and KALODNER, Judges.

GOODRICH, Circuit Judge.

This is an appeal from a judgment for the defendant entered by the District Court for the Eastern District of Pennsylvania in a personal injury action brought against the defendant, Lipsett, Inc.[1] All the problems in the case were very carefully considered in an opinion filed by District Judge Clary, D.C.E.D.Pa.1959, 174 F.Supp. 813. Since we agree with him, this opinion can be appropriately shortened.

The only substantial problem in the case is whether the district judge was correct in concluding that Lipsett was a "statutory employer" of the plaintiff under the provisions of the Pennsylvania Workmen's Compensation Act and was, therefore, not subject to suit for common-law negligence.

Pennsylvania Power & Light Company (P.P.&L.) desired to remove certain equipment and demolish certain buildings and other structures at four of its steam electric stations in Pennsylvania. Lipsett paid P.P.&L. $100,000 for what P.P.&L. called Lipsett's "offer to purchase the equipment. * * *" While thus phrased in terms of a sale and purchase the contract further provided, with respect to the Williamsport steam electric station, at Williamsport, Pennsylvania, that: "All the equipment in the main power plant building to be removed, that building and the two stacks demolished and all the debris disposed of to our satisfaction by April 1, 1956." Thus it is seen that while Lipsett was buying materials it was also entering into a demolition contract which was to be performed to the satisfaction of P.P.&L. In July, 1955, Lipsett, after having begun work at the Williamsport station, had its superintendent remove all of its equipment and take its men away from the job; it is admitted by Lipsett's counsel that Lipsett thereafter did not have any actual control or possession of the premises. On August 29, 1955, Lipsett entered into a contract with the third-party defendant, Andershonis, Inc., by which the latter agreed to demolish the plant and stacks, remove the debris, and prepare and outload all the steel and iron for a stipulated price. During the work by

---

1. Jurisdiction is based on diversity of citizenship. Although neither party raises the problem, we believe it desirable to indicate the manner in which federal diversity jurisdiction attached in this case. The original complaint was filed on September 27, 1956, and listed Pennsylvania Power & Light Company (a Pennsylvania corporation) and Lipsett, Inc. (a New York corporation) as party defendants. Plaintiff Girardi was listed as a New York citizen (with residence at Veterans Hospital in the Bronx). On November 27, 1957, plaintiff moved to amend his complaint to allege that at the time of filing the complaint he was a citizen of Pennsylvania. This unopposed motion was granted on September 22, 1958. On October 6, 1958, Pennsylvania Power & Light Company moved to dismiss the case as to it for lack of diversity of citizenship. The motion was granted. The action then proceeded to trial which culminated in judgment for defendant Lipsett, Inc. and Judge Clary's denial of plaintiff's motions to vacate judgment and for a new trial from which plaintiff appeals.

Ever since Strawbridge v. Curtiss, 1806, 3 Cranch. 267, 7 U.S. 267, 2 L.Ed. 435, it has been settled that in order for there to be diversity jurisdiction in the first instance there must be diversity of citizenship between *each* plaintiff and *each* defendant in the case. However, it is equally true that a federal court may drop nondiverse defendants and retain jurisdiction over the case where those dropped defendants are not indispensable parties. See Kerr v. Compagnie De Ultramar, 2 Cir., 1958, 250 F.2d 860, 862–863; Horn v. Lockhart, 1873, 17 Wall. 570, 84 U.S. 570, 579, 21 L.Ed. 657. Thus, the court below, by dropping Pennsylvania Power & Light Company as a party defendant, retained jurisdiction over the case.

Andershonis, Girardi, an employee of that company, was badly hurt. The jury found, and the finding is not disputed, that both Lipsett and Andershonis were negligent and that the negligence contributed to Girardi's injuries. Can the plaintiff recover against Lipsett?

Defendant's argument is that it is a "statutory employer" within the meaning of Section 203 of the Pennsylvania Workmen's Compensation Act of 1915, Pa.Stat.Ann. tit. 77, § 52. If it is, then it is not subject to liability in a common-law negligence action. See Gallivan v. Wark Co., 1927, 288 Pa. 443, 136 A. 223.

This section, as read by the Supreme Court of Pennsylvania in McDonald v. Levinson Steel Co., 1930, 302 Pa. 287, 294–295, 153 A. 424, 426, is as follows:

> "An employer [principal contractor] who permits the entry upon premises occupied by him or under his control of a laborer * * * hired by * * * a contractor [subcontractor], for the performance upon such premises of a part of the employer's [principal contractor's] regular business entrusted to such * * * contractor [subcontractor], shall be liable * * * in the same manner * * * as to his own employee." [2]

The plaintiff would have the instant case read on McDonald where a suit against the defendant was held to lie. He argues that Lipsett could not be a "statutory employer" because it was an owner as was the defendant in McDonald. But, in the McDonald case, the defendant, owner of a lease held in land, was building a structure thereon for its own convenience. It was the owner, albeit not the owner of the fee, of the land on which the structure was being built. Lipsett was an owner of the metal which it bought, no doubt, but it was not the owner of the land. As already pointed out, it was on P.P.&L.'s land under its agreement to demolish the building by a certain date and to the satisfaction of the company. Its only privilege on the land was to remove the scrap metal and do this demolition work.[3]

The plaintiff also insists that our decision in Boettger v. Babcock & Wilcox Co., 3 Cir., 1957, 242 F.2d 455, shows that the trial court was in error here. We do not agree with that. The Boettger decision gives us no guidance to the answer in this case for the court was there concerned with a wholly different problem.

So we go back to the words of the statute. At the time Lipsett entered the premises of P.P.&L. in Williamsport, it was certainly a principal contractor and it was both occupying and controlling the premises. Immediately prior to the time Andershonis went to work under the subcontract, Lipsett itself, it may be granted, was not physically occupying the premises. Its equipment and men had been taken away. But it was not through with the premises. It is true that it made a contract with Andershonis to do what it had contracted with P.P.&L. to do, but this did not release Lipsett from its contract, certainly not as a

---

**2.** The section was originally enacted in 1915. Act of June 2, 1915, P.L. 736, Laws of Pa.1915, No. 338, Art. II, § 203. at p. 738. In 1937 it was amended to include a clause which read: "whether said injury occurred upon premises occupied or controlled by the employer or not." Act of June 4, 1937, P.L.1552, 2 Laws of Pa.1937, No. 323, Art. II, § 203 at p. 1555. In Rich Hill Coal Co. v. Bashore, 1939, 334 Pa. 449, 464–467, 7 A.2d 302, 310–311, this clause was held to make the section violative of the Pennsylvania constitution. Later that year, the legislature enacted the present provision which is identical to the provision in force prior to the 1937 amendment.

**3.** It should also be noted that even the court in McDonald envisioned certain situations where the lessee could be a "statutory employer." "The owner of premises may contract with his lessee to erect a structure, and in such case the lessee would be acting as an erector, builder, or principal contractor and not as a lessee." 302 Pa. at page 298, 153 A. at page 428. We are not here faced with a problem of logical inconsistency such as that which faced the court in McDonald.

matter of law and certainly not as a matter of fact because there is an express finding by the jury to that effect. The plaintiff complains that the jury was allowed to consider the fact that Lipsett told Andershonis where to ship the scrap which Andershonis collected on the property. We see no error in this for we think it is some evidence of Lipsett's right to control. We do think it more important as to the right to control that Lipsett is bound by its agreement with P.P.&L. to do certain things on this land at Williamsport to the satisfaction of P.P.&L. and by a given date. It, therefore, had the obligation to control and must exercise it if necessary to perform its contract.

■ So we are left with what has already been described as the main question whether "control" as used in Section 203 means actual control or a right to control. We are not helped by plaintiff's very earnest and, indeed, very able argument about "strict," "liberal," "literal" and "inclusive" interpretations as applied to the problem here.[4] Both parties and the court below have searched in vain for any reported legislative history behind Section 203.

■ We turn then to the Pennsylvania decisions. In Qualp v. James Stewart Co., 1920, 266 Pa. 502, 509, 109 A. 780, 782, a case which the plaintiff thinks little of, the court said: "The Legislature wanted to definitely fix some responsible party with the obligation of paying compensation to injured workmen, and the party selected was the first whose duty it was to assume control of the work * * *." The plaintiff disputes the premise that "principal contractors are more likely to be financially responsible than subcontractors," which he ascribes to the court in Qualp.

Our function here is not to agree or disagree with premises adopted by the Pennsylvania courts in interpreting Pennsylvania statutes. It is to get, as best we can, the point of view of the Pennsylvania courts with regard to the statute and apply it. We think the quote

4. As we most recently did in J. E. Faltin Motor Transportation, Inc. v. Eazor Express, Inc., 3 Cir., 1959, 273 F.2d 444, 446, note 6 (a case involving interpretation of a contract), we once again call attention to Llewellyn, *Remarks On the Theory of Appellate Decision and the Rules or Canons About How Statutes Are to Be Construed*, 3 Vand.L.Rev. 395, 401–04 (1950) in which the author lists some canons of statutory construction under the fencing terms of thrust and parry. The following are of particular relevance here:

| "Thrust | But | Parry |
|---|---|---|
| 2. Statutes in derogation of the common law will not be extended by construction. | | 2. Such acts will be liberally construed if their nature is remedial. |
| 12. If language is plain and unambiguous it must be given effect. | | 12. Not when literal interpretation would lead to absurd or mischievous consequences or thwart manifest purpose. |
| 16. Every word and clause must be given effect. | | 16. If inadvertently inserted or if repugnant to the rest of the statute, they may be rejected as surplusage." |

The Pennsylvania Statutory Construction Act of 1937, Pa.Stat.Ann. tit. 46, §§ 501–602, tells us that a statutory provision such as the one before us must be strictly construed. Id. at §§ 558(8), 581. And Pennsylvania case law tells us to construe the section "literally." McDonald v. Levinson Steel Co., 1930, 302 Pa. 287, 292, 153 A. 424, 425. See also Gallivan v. Wark Co., 1927, 288 Pa. 443, 449, 136 A. 223, 225. But Pennsylvania case law also tells up that Section 203 "must be liberally construed to effectuate its purpose." Davis v. City of Philadelphia, 1943, 153 Pa.Super. 645, 650, 35 A.2d 77, 80.

Additionally, we are entitled to presume that the legislature does not intend unreasonable results and that it intends to favor the public interest over any private interest. Pa.Stat.Ann. tit. 46, § 552(1), (5).

from Qualp is helpful to this end. So, also, is this one from Swartz v. Conradis, 1929, 298 Pa. 343, 345, 148 A. 529, 530:

> "When the relationship of contractor, subcontractor, and employee springs into existence, the Compensation Act takes hold; the common law relation of the parties theretofore existing is changed into a statutory relation."

We think, also, it is significant, as the defendant argues, that the language of the statute is disjunctive and says premises "occupied by him or under his control." To require both occupancy and control would not give each clause its meaning in the disjunctive as we are required to do.[5]

It can be said, however, that here we have on the part of Lipsett a right to occupy as well as a right to control, so that even if the statutory phrase were in the conjunctive instead of the disjunctive, the result would not be changed from that already indicated.

When Lipsett first moved upon P.P. &L.'s land with its men and equipment, it was obviously in physical occupancy of the land as well as in control of the operations being conducted thereon. Thereafter, it took away the equipment and called off its men. Yet it was not free from the duties of occupancy any more than it was free from the duties of control. If Andershonis broke its contract with Lipsett, either by mismanagement or repudiation, it would have been the duty of Lipsett to move in or get someone else to move in, to complete the job as promised to P.P.&L. The prime contractor remained liable to its promisee regardless of the number of subcontracts it made, unless released. In this case, it was not released.

We think that a Pennsylvania court would say that the obligation continuing on Lipsett here with regard to the premises and its authority with regard to the work which remained to be done under the contract made with P.P.&L. gave it both "control" and "occupancy" within the meaning of Section 203 and made it, therefore, a "statutory employer."

The judgment of the district court will be affirmed.

---

5. See Davis v. City of Philadelphia, 1943, 153 Pa.Super. 645, 650, 35 A.2d 77, 80, and Pa.Stat.Ann. tit. 46, §§ 551, 552(2).