## Annocki v. George Myers Company

*Andrew F. Napoli*, for plaintiff.

*William V. Coleman*, for defendant.

SPORKIN, J., April 6, 1973.—Plaintiff Joseph Annocki (Annocki) filed a complaint in trespass against defendant George Myers Company (Myers) for damages arising from injuries Annocki allegedly sustained while employed as a bricklayer for Jack Casper Company (Casper) at the Columbus Recreation Center, property located at 12th and Wharton Streets.[1] Annocki asserted that the injuries were occasioned by the negligence of Myers, its workmen, its agents or employes.[2]

---

[1] This is a facility owned and operated by the City of Philadelphia as a neighborhood recreation center.

[2] Myers had been awarded the general construction contract by the City for additions and alterations to the Center, and Casper was one of the subcontractors of Myers, having been engaged for the masonry work to be performed as a part of the overall responsibilities assumed by Myers under the principal contract.

Myers, in its answer to the complaint, alleged that Annocki was barred from court recovery against Myers in that Myers was at the time of the subject accident (June 16, 1964) a "statutory employer" under section 203 of the Pennsylvania Workmen's Compensation Act of June 2, 1915, P.L. 736, as amended, 77 PS §52, and moved for summary judgment. Following the denial of summary judgment by the Honorable Ned L. Hirsh the matter was referred to us. After several conferences and after involved settlement discussions, a stipulation was entered into by counsel on both sides, whereby the question of "statutory employer" would be determined in a nonjury trial as a final order.

Subsequently this cause came before us for trial. Upon consideration of the testimony adduced before us, of the arguments and briefs of counsel, and of our own extensive research, we have concluded that Myers stood at the time of the accident in question in the relationship of a "statutory employer" to Annocki, under the Pennsylvania Workmen's Compensation Act, section 203, and that Annocki is therefore not entitled to recovery against Myers at common law.

In order to determine whether or not Myers stands in the relationship of a "statutory employer" to Annocki, under the Workmen's Compensation Act, we must at the outset examine the act itself in light of the relevant case precedents.

The Pennsylvania Workmen's Compensation Act provides, in pertinent part, that:

"An employer who permits the entry upon premises occupied by him or under his control of a laborer or an assistant hired by an employe or a contractor, for the performance on such premises of a part of the employer's regular business entrusted to such employe or contractor, shall be liable to such laborer or assistant in the same manner and to the same extent

as to his own employe. 1915, June 2, P.L. 736, art. II, Sec. 203; 1937, June 4, P.L. 1552, §1; 1939, June 21, P.L. 520, §1."

The term "contractor" is defined in section 105 of the act:

"The term 'contractor', as used in article two, section two hundred and three, and article three, section three hundred and two (b), shall not include a contractor engaged in an independent business, other than that of supplying laborers or assistants, in which he serves persons other than the employer in whose service the accident occurs, but shall include a sub-contractor to whom a principal contractor has sub-let any part of the work which such principal contractor has undertaken. 1915, June 2, P. L. 736, art. 1, §105; 1937, June 4, P. L. 1552, §1; 1939, June 21, P. L. 520, §1": 77 PS §25.

In construing section 203 of the act, our Pennsylvania Supreme Court, in the keynote case of McDonald v. Levinson Steel Co., 302 Pa. 287, 153 Atl. 424 (1930), has defined five criteria that must be proved by a defendant before he will be considered to be a "statutory employer":

"(1) An employer who is under contract with an owner or one in the position of an owner.

"(2) Premises occupied by or under the control of such employer.

"(3) A subcontract made by such employer.

"(4) Part of the employer's regular business entrusted to such subcontractor.

"(5) An employee of such subcontractor": Id. at 295.

Annocki concedes, in the case now before us, that: (1) Myers was under contract with the owner of the property (the City of Philadelphia); (2) at the time of the accident there was a subcontract between Myers and the employer of Annocki (Casper); and (3)

Annocki was an employe of such subcontractor. Annocki does not concede, however, that the agreement between the subcontractor and defendant general contractor (Myers) was valid under the terms of the general contract between Myers and the City. Thus, the issues confronting us are narrowed to three:

(a) Were the premises involved "occupied or under the control of" Myers?

(b) Did Myers entrust part of its "regular business" to Casper?

(c) Was the subcontract a valid one, and if it was not, does this have any bearing on the outcome of the "statutory employer" question?

Any undertaking to interpret and to apply section 203 must be approached with due regard for the historical context in which Workmen's Compensation Laws were originally passed, and with respect to the problems which have arisen during the years since passage. Original passage of the Pennsylvania Workmen's Compensation Act came at a time when workmen were concerned with gaining some sort of *assured* recovery for injuries suffered on the job, and when employers were concerned with unusually large jury verdicts in trials at common law, such verdicts seeming to stem from the prejudice of jurors against employers. The Workmen's Compensation Act thus represented a tradeoff between employer and employe:

"To assume liability for payment to an employe when the accident was due to no fault of the employer, especially in cases where the employer had adopted every known and modern safety device, was thought to be contrary to the established principles of law that no person should be responsible in damages unless he was at fault. The employer, in exchange for limited liability, was willing to pay on some claims in the future where, in the past, there had been no liability

at all. The employe was willing to not only give up trial by jury, but to accept far less than had often been won in court, provided he was sure of getting a smaller and definite sum without being obliged to fight for it, and to get it promptly and in payments at regular periods to provide for the necessities of life. It was, in effect, a 'fifty-fifty' agreement": Skinner on Workmen's Compensation Law, Vol. 1, page 18, 4th Ed. 1947.

Difficulties in applying the act have arisen from an understandable desire generally on the part of both the employer and the employe to come within the coverage of section 203 only when it is beneficial for either of them to do so. Thus, where an employe of a subcontractor is injured through no fault of the principal contractor, such claimant would be anxious to be covered by the act, while the contractor would press to have recovery turn on the outcome of a common law trespass action. Conversely, where claimant's injury is alleged to have been caused by negligence of the principal contractor, its agents, or employes, it is in the interests of the *claimant* to have recovery determined by the result of an action sounding in tort, before a jury, and for the employer to assert that he comes within the coverage of section 203: Stipanovich v. Westinghouse Electric Corp., 210 Pa. Superior Ct. 98, 102, 231 A.2d 894, 898 (1967).

Interplay of such natural interests of the parties also becomes the reason for the enactment of section 203. It would appear that the general purpose of section 203 is to afford Workmen's Compensation protection to injured employes of uninsured employers by imposing secondary liability therefor upon the contractor who let out the work. On this very subject, our Supreme Court, in Qualp v. James Stewart Co., Inc., 266 Pa. 502, 509, 109 Atl. 780 (1920), had the following to say:

"The legislature wanted to definitely fix some responsible party with the obligation of paying compensation to injured workmen, and the party selected was the first whose duty it was to assume control of the work. It selected the first in succession from the owner, believing the owner would contract with none but responsible persons."

Since the Workmen's Compensation Act of Pennsylvania is a statute in derogation of former common law rules, it should seemingly receive strict interpretation:

"It is better for the efficient administration of the Workmen's Compensation Act of June 2, 1915, P. L. 736 to construe it literally as to the obligations created, leaving those under the common law that were intended to be so, and under the Compensation Act those intended": McDonald v. Levinson Steel Co., 302 Pa. 287, 292, 153 Atl. 424 (1930).

Section 203 has been described as the most drastic interference with individual rights in the entire Act: Gallivan v. Wark Co., 288 Pa. 443, 449, 136 Atl. 223 (1927). However, the act is also a *remedial* statute, and canons of interpretation dictate that such statutes are to be *liberally* construed to avoid frustration of the statutory purpose: Girardi v. Lipsett, Inc., 275 F.2d 492, 496 (3rd Cir. 1960). Our application of case law to this particular action must therefore be guided by a perception of the purpose of the act, and of section 203, discussed heretofore. It is with this caveat in mind that we now turn to a consideration of whether the premises upon which Annocki was injured herein were "occupied by or under the control of" Myers.

The requirement in McDonald, supra, of "premises occupied by *or* under the control of" the principal contractor, which fact must be established in order for such contractor to be considered a "statutory employer" under section 203, is to be read with a disjunc-

tive "or." Id. at page 298. A showing of *either* occupancy *or* control by the principal contractor will satisfy the requirement, as stated by our Superior Court in Davis v. City of Philadelphia, Trustee, 153 Pa. Superior Ct. 645, 650, 35 A.2d 77 (1943):

"Appellant earnestly argues that the word 'or' in 'occupied by . . . or under his control' in section 203 should be interpreted in the conjunctive, rather than disjunctive, thereby making both control and occupancy necessary to the liability of the principal contractor . . . We find no reason to conclude that the legislature intended 'or' to be used other than in its ordinary disjunctive sense."

The premises in the instant case were owned by the City and were the site of a job that Myers had contracted with the owner (the City) to perform. On the day of the accident which allegedly caused Annocki's injuries, the job supervisor of Myers was at the site, as were at least two workmen under the employ of Myers. In Girardi, supra, defendant general contractor (Lipsett) had sublet the entire job to Andershonis, Inc., the employer of Girardi, and Lipsett had *no* personnel at the site during work by Andershonis. The Girardi Court held, however, that Lipsett was not only in occupancy, but also in control of the premises so as to come within the purview of section 203, finding such occupancy and control as arising from the *obligation* to occupy and control such premises owed by Lipsett to the owner, under the principal contract. The case before us is even clearer, for here occupancy is established by more than the fact that Myers had a continuing obligation to the owner of the premises; here, Myers had supervisory personnel at the premises, and had a part of its own work force engaged thereat; thus, the occupancy by Myers was an actual *physical* presence, rather than a merely metaphysical occupancy

as in Girardi. It is plain to us, therefore, that Myers has proved, as a fact, that he did *occupy* the premises upon which Annocki claims he was injured.

Nor do we believe that our decision herein is controlled by the line of cases headed by Boettger v. Babcock & Wilcox Co., 242 F.2d 455 (3rd Cir. 1957); Hayes v. P.T.C., 312 F.2d 522 (3rd Cir. 1963), and most recently by Fishel v. Sears, Roebuck & Co., 6 Comm. Ct. 384 (1972).[3] In Boettger, the Court of Appeals held the principal contractor to be a "statutory employer" within the meaning of section 203, where defendant subcontracted an entire portion of its regular operations to Boettger's employer, and Boettger was injured in the course of such work at the subcontractor's *own premises*, the *regular place of business* of the subcontractor. Here, Casper's presence at the site was merely incident to an agreement to perform a portion of the responsibilities undertaken by *Myers* under a general construction contract with the owner of the premises (the City), and where the very nature of such principal contract obligated Myers to do work *at the premises* upon which Annocki was injured. Thus, the factual circumstances of Boettger are not even remotely related to those of the case at bar.

In direct contrast to the Boettger holding, the same Court of Appeals held in the later Girardi case, supra, that "control or occupancy" is established by a *right* to control and to occupy the premises, arising from a continuing obligation owed, as in the instant case, under a principal contract to carry out defined duties at that location.[4]

---

[3] Our independent research on the subject of "control" has led us to Boettger and to Fishel, and although such cases were not discussed by either party in their comprehensive briefs and arguments before us, we felt it pertinent to treat these cases in our opinion.

[4] It is to be noted that Boettger was decided in 1957 by the

Judge Goodrich, speaking on this precise point for the Court of Appeals in Girardi v. Lipsett, Inc., supra, stated the following:

"So we go back to the words of the statute. . . . Immediately prior to the time [the employer of Girardi] went to work under the subcontract, [Lipsett, the general contractor] itself, it may be granted, was not physically occupying the premises. Its equipment and men had been taken away. *But it was not through with the premises.* It is true that it made a contract with [Girardi's employer, the subcontractor] to do what it had contracted with [the owner] P.P. & L. to do, but this did not release Lipsett from its contract, certainly not as a matter of law and certainly not as a matter of fact because there is an express finding by the jury to that effect. . . . *We do think it more important as to the right to control that Lipsett is bound by its agreement with P.P. & L. to do certain things on this land at Williamsport to the satisfaction of* [*the*

Third Circuit Court of Appeals, and defined "occupancy or control," under section 203, as being actual physical occupancy or control of the premises. Three years *later*, however, in 1960, the same court, in the Girardi decision, stated in contradistinction to the Boettger test of actual physical control, that a finding on the question of occupancy or control turns on whether the principal contractor has the *right* to occupy or control the subject premises, arising from obligations owned under the principal contract. In 1963, in Hayes v. P.T.C., supra, the same court *adhered* to the Girardi test, involving the *right* to occupy or control. It is therefore apparent that if the Boettger test has any continuing vitality, its application has been limited to situations closely analogous to the particular factual circumstances of Boettger, wherein Boettger was injured on the *premises* of the subcontractor, that being the plant of such subcontractor, and was not, as Annocki, injured at premises *upon which very location* the principal contractor had agreed to perform specified duties, under a contract which expressly placed the burden of control in the performance of such duties upon the principal contractor (which would be Myers in the instant case).

*owner*] *and by a given date.* It therefore had the *obligation to control* and must exercise it if necessary to perform its contract": Girardi, supra, at pages 495-496. (Italics supplied.)

Judge Goodrich further elaborated upon the question of whether "control" under section 203 means *actual control* or the *right to control,* finding for the latter interpretation, with the right to control or occupy arising from duties bound up in the promises of performance made in the principal contract, and accordingly applied his construction of the statutory language to the facts in Girardi.[5] His persuasive language is of particular relevance in the trespass action before us:

"[Although Lipsett had completely removed its men and equipment from the site, in favor of those of the subcontractor, Girardi's employer,] it [Lipsett] was not free from the *duties* of occupancy any more than it was free from the duties of control. If [Girardi's employer] broke its contract with Lipsett, either by mismanagement or repudiation, it would have been the duty of Lipsett to move in or get someone else to move in, to complete the job as promised to P.P. & L. The prime contractor remained liable to its promise regardless of the number of subcontracts it made, unless released. In this case, it was not released.

"[T]he *obligation* continuing on Lipsett here with regard to the premises and its authority with regard to the work which remained to be done under the contract made with P.P. & L. gave it [Lipsett] both 'con-

---

[5] We find it important to note that the same Court of Appeals which had decided Boettger, dismissed the Boettger decision as inapposite to the factual situation and the issues in Girardi, saying in Girardi that "The Boettger decision gives us no guidance to the answer in this case for the Court was there concerned with a wholly different problem": Girardi, supra, at page 495.

trol' and 'occupancy' within the meaning of Section 203 and made it, therefore, a 'statutory employer.' " Id. at page 497.[6] (Italics supplied.)

We believe that the reasoning of Judge Goodrich in Girardi has compelling significance in the cause now before us. Here, Myers was, like Lipsett in Girardi, a principal contractor who had agreed with the owner (City of Philadelphia) to do specified work *upon designated premises* (the Columbus Recreation Center at 12th and Wharton Streets). Myers subcontracted a portion of the work to Casper, the employer of Annocki. Such obligations owed by Myers under the principal contract had not been fully discharged and Annocki suffered an injury while working at the designated premises, on duties agreed by Casper to be carried out under the subcontract but also owed by *Myers* under the principal contract.

As more fully discussed hereinafter, Myers was expressly obligated to maintain control over the premises, by the terms of his contract with the City. Furthermore, as we have previously stated, Myers *actually*

---

[6] Cf. Fanning v. Apawana Golf Club, 169 Pa. Superior Ct. 180, 184, 82 A. 2d 584 (1951), and Barr v. B & B Camper Sales, 7 Comm. Ct. 323 (1973). These cases discuss the element of control, bearing upon the question of whether there was an *employer/employe* relationship between plaintiff and defendant, and conclude that control is established by the right to control. On this point, the Superior Court in Fanning, in language cited by the Commonwealth Court as controlling its decision in Barr, said that:

"The exercise of control is, of course, evidence of the right to do so; but where, as here, that *right* is clear, such evidence is surplusage. The defendant did exercise as much control as was necessary under the existing circumstances; that it did not exercise more control is not critical so long as the right to exercise such control was present": Fanning, supra, at page 184. (Italics supplied.)

We believe that Fanning and Barr, while not "statutory employer cases," nonetheless treat related questions of control to those now before us, and are therefore persuasive here.

*physically* occupied the premises through the presence thereon of its supervisory personnel and of a part of its work force. Thus, as the Girardi court held under almost identical (although with respect to the application of section 203 *less* compelling) factual circumstances, we conclude herein that Myers had *both* "control" and "occupancy" within the meaning of section 203, of the premises where Annocki suffered injuries.

Similarly, the Fishel case is distinguishable on its facts from Girardi and from the instant case. In Fishel, defendant Sears sold an air conditioner to a customer. Sears hired an independent contractor to install the equipment at the home of such customer, neither providing nor anticipating, as in the instant case, that the independent contractor would hire additional employes to perform such duties. Further, Sears, as opposed to Myers herein, or Lipsett in Girardi, never established a presence at the subject premises, and never exercised even a modicum of control over work done at the site. Unbeknown to Sears, the independent contractor hired Fishel as his assistant, and Fishel was subsequently injured while performing duties under the subcontract. Under these circumstances, our Commonwealth Court in Fishel found the case to be controlled by Boettger, without even referring to the later Girardi holding, and declared that Sears was not a "statutory employer" under section 203. As in our consideration of Boettger, however, we find Fishel to be inapposite to a determination of the issue now before us.[7]

_____

[7] It is to be observed that the Commonwealth Court, in Fishel, also cites Lee v. McMinn Industries, Inc., 167 Pa. Superior Ct. 501, 507, 76 A. 2d 493 (1950), for the proposition that the test for *control* is whether or not defendant had actual physical control of the premises (the Boettger test discussed at page 195 herein). Without intending any disrespect to our distinguished Commonwealth Court, we must say that our reading of the Lee decision constrains

Finally, in the 1963 Hayes case, the court *agreed* with the holding in Girardi, supra, that the correct standard for deciding whether the principal contractor controlled or occupied such premises so as to make him a "statutory employer" within the coverage of

---

us to state that we find Lee to be inapplicable to the issue of *control,* although somewhat factually similar to Boettger and Fishel, in that plaintiff (Lee) was injured upon premises remote from the site which the subcontractor then or ever occupied in the performance of duties assumed by defendant principal contractor, (McMinn). Lee was injured at a point adjacent to which McMinn had been performing other of his responsibilities under the principal contract, but remote in distance from the site at which Lee's employer had been performing duties agreed to under the *subcontract.* [The principal contract in Lee obligated McMinn to perform varied functions at points along a vast stretch of public highway; Lee was injured while traveling from one job site of his employer (the subcontractor) to another, the accident occurring five and one-half miles from Lee's destination, and at a great distance from his point of departure. The fact that McMinn happened to be engaged in other duties at or near the precise spot of Lee's injury was, as stated by Judge Reno in Lee, supra, at 507, simply "a pure coincidence, a concurrence of event and place without causal nexus."

The location at which Lee suffered his injuries was concededly occupied *and* controlled by McMinn. The crucial inquiry in Lee, then, was whether or not the injury occurred on *premises* occupied or controlled by McMinn; the issues of occupancy or *control* were therein *not at all contested nor discussed.* The Superior Court found in Lee that since Lee's employer was not working and had no obligation to work at or near the part of McMinn's premises where Lee was injured, McMinn was found not to have stood in a relation to Lee of "statutory employer," with respect to Lee's accident. The Lee test, when applied to the factual circumstances before us in the cause at bar, serves only to further *support* our conclusion that Annocki *was* injured on premises occupied or controlled by Myers, since the accident occurred at a site where Casper was working and had a present obligation to perform a portion of the duties assumed by Myers under a principal contract, the very subject of which involved alterations and improvements *to the site itself* and the buildings *thereon.*

section 203 was to inquire as to whether or not such contractor had a *"right of occupancy or control"* at the premises: Hayes, supra, at page 524. (Italics supplied.) The court there found that under the *facts* before it, defendant did *not* have such a *right* to occupy or control the premises, because the owner (PTC) *expressly* reserved and actively exercised that right therein. Such is not the case in the present factual situation, however, for the City herein did not reserve such a right of occupancy and control (stating only that the Center would remain open to the public during alteration thereof), but instead *expressly delegated* such rights and duties to Myers under the terms of the principal contract, which provide that:

"Party of the second part [Myers] shall have *charge and control of the entire work* until completion and acceptance of the same by party of the first part": Defendant's Exhibit "A," page 2. (Italics supplied.)

Furthermore, Myers also physically occupied the premises, in the course of which it had supervisory personnel present in order to oversee the conduct of the general operations there carried out. We are thus impelled to find *as a fact* that Myers occupied· or controlled the premises in question, thus meeting the tests of Girardi and Hayes.

We hold Annocki's contention, that the element of control was not present because under the contract between Myers and the City, the right of final approval of work completed at the site belonged to the City, to be completely untenable. If control is made equivalent to the right of approval, however, the result would be that any contractor whose work is subject to final approval of the owner would be able to escape remedial coverage of the section, when to do so would be to his benefit, simply by asserting a lack of the right to "control." Since almost every owner expressly or im-

pliedly reserves such right of final approval, acceptance of the test for "control" advocated herein by Annocki would make almost nil the scope of coverage of section 203, a result not contemplated even by those favoring the strictest possible reading of the section. The court in Qualp, supra, explained that section 203 was designed to place the burden of compensating injuries to the employe of the subcontractor, on the party whose first "duty" it was to assume control of the work. As previously referred to, defendant's Work Contract "A" with the City (defendant's exhibit "A," page 2) provided that Myers was to have "charge and control of the entire work until completion" of the job. This is the "duty" contemplated by the court in Qualp, and would obviously further establish that Myers had "control" of the premises in the instant case.

Nor is there merit to Annocki's contention that since Myers was only one among several prime contractors at the site, defendant Myers failed to meet the criteria for control as defined in the five-pronged McDonald test.[8] It is to be observed that a requirement of *exclusive* control was never particularized in McDonald v. Levinson Steel Co., 302 Pa. 287, as reflected by the following example cited by the McDonald court, 302 Pa. at page 296:

"Suppose X, the owner of property, personally undertakes the erection of a building . . . letting parts of the work to A and B; X does the rest of the work; A sublets part of his work to C. Reading this situation into section 203, the contracts made with A and B are independent and A and B are independent contractors. (citing case authority). As to the premises, so much of X's premises necessary for the accomplishment of A

---

[8] The McDonald test is quoted in its entirety at page 190 of this opinion.

and B's work are in the occupancy and under the control of A *and* B [citing authority]. As to his own employees, X is an employer under other sections of the act, but his relation to A, B, and C would be the same as the relation of the contractors on the job to each other [citing authority]. As to the employees of C, a subcontractor, X is not a statutory employer, but is liable at common law, but A is liable as a statutory employer."

Under the McDonald illustration, *concurrent* control of premises is sufficient to establish that a principal contractor "occupied or controlled" the premises, within the intendment of section 203. In view of our foregoing analysis of McDonald, of Girardi, of Fishel, of Lee, and of Hayes, we conclude that Myers not only occupied but as well controlled the premises now in question.

Nor can we agree with the further argument of plaintiff Annocki that because Myers subcontracted to Casper all masonry obligations owed by Myers under the principal contract, Myers did not meet the Mc-Donald requirement of having entrusted part of its "regular business" to the subcontractor. In support of his assertion, Annocki cites McDonald, supra, and Jamison v. Westinghouse Electric Corp., 375 F.2d 465 (3rd Cir. 1967), as precedent for such a proposition. It is plain to us, however, that these cases actually *support* our view that Myers does come within the ambit of section 203.

In both McDonald and Jamison, the decision that the party sued was not a "statutory employer" turned upon a finding that there was no *duty*, under the *principal* contract, for such party to perform the particular type of work in the performance of which the complainant sustained an injury. Thus in McDonald, plaintiff McDonald's employer was doing work on the

property of defendant (Levinson Steel Co.), owner of the premises, and the work done was strictly for Levinson's benefit rather than for the benefit of some party to whom Levinson *owed a contractual duty.* McDonald's employer was thus an independent contractor under the meaning of that term in section *105,* supra, and not being obligated to carry out duties in furtherance of promises under a principal contract, McDonald's employer was not a "contractor" within the coverage of section 203.[9] In Jamison, defendant (Westinghouse) engaged the employer of Jamison to paint premises operated by Westinghouse under a *research and development contract* with the owner, the Atomic Energy Commission. There, the court held that since such painting was not among the duties owed by Westinghouse to the Atomic Energy Commission under the *principal* contract, the duties subcontracted were not a part of the "regular business" of Westinghouse.

The Jamison court, however, also defined a situation in which work sublet *would* be considered a part of the "regular business" of the principal contractor, saying:

"A clear illustration is the case of a *general construction contractor* all of whose obligations are fixed in the contract with the owner and who obviously will subcontract various portions of his contractual obligation. *In such a case, while the principal contractor may not directly perform a particular part of his general obligation, choosing instead to subcontract it, nevertheless, he may accurately be said to be in the business of assuming the broad obligations of a principal contractor and therefore equally to be in the business of letting out portions of his undertaking to*

---

[9] Section 105 is quoted, supra, at page 190.

*others to perform on his behalf.* To construe the subject matter of the subcontract as outside the principal contractor's business would be to reduce the scope of his undertaking as a principal contractor": Jamison, supra, at pages 468 and 469. (Italics supplied.)

As noted heretofore, Lipsett, in Girardi, was similarly found to be a "statutory employer" although Lipsett had sublet his entire contractual obligation. Crucial to such finding was the fact that Lipsett was still under *obligations* arising from the principal contract: Girardi, supra, at page 495.

In the instant case, the principal contract between Myers and the City obligated Myers to complete "all general construction work for additions and alterations to Columbus Square Recreation Center, 12th and Wharton Streets, Philadelphia, Pa. and doing all appurtenant and other work as ordered and required by the Department of Recreation."[10] As specified in the City's invitation to bid, Part II, the General Construction provisions of the contract required Myers to do the masonry work among other types of improvements at the site. As heretofore indicated, Myers let out the masonry work to Casper, in whose employ plaintiff was injured at the premises. Myers has therefore demonstrated that masonry work was an undertaking necessary to fulfill its *obligations* under the principal contract, and we thus find that the instant facts fall squarely within the prototype situation intended by the Legislature to be covered by section 203, described in Jamison, supra, and exemplified by the decision in Girardi.

Moreover, holding for Annocki's position herein would invite the exact difficulties that section 203 was intended to remedy, for it would allow a principal con-

---

[10] Defendant's exhibit "A," page 1.

tractor who has a duty under the principal contract to control operations at the premises, to evade statutory coverage simply by subletting a segment of the obligations under its principal contract. As stated in Jamison, a principal contractor becomes a "statutory employer" under section 203 upon showing that "a triangular contractual relationship, involving an owner, a principal contractor and the latter's subcontractor" exists. Jamison, supra, at 469. To the same effect, see also Swartz v. Conradis, 298 Pa. 343, 345, 148 Atl. 529, 530 (1929). We subscribe to the Jamison and the Swartz test, and we believe that Myers has met the requirements thereof.

Finally, Annocki argues that the subcontract with Casper was not valid since it did not have written approval allegedly required from the City under the principal contract and therefore that the requirement of "a subcontract," set forth in McDonald, supra, was not met. The purpose of section 203 is, as stated previously, to have a principal contractor who sublets part of his obligation stand in the shoes of the subcontractor with respect to reimbursing that subcontractor's employe for injuries suffered in the course of employment under the subcontract. Such obligation to pay compensation was placed on the party first in succession from the owner, because the Legislature believed that such party was most likely to be a responsible enterprise: Qualp, supra, at 509. Further, section 203 was, as stated by Skinner, supra, intended to strengthen the assurance that injured claimants would be properly compensated under the act.

We believe, therefore, that the proper test is simply to inquire whether there was *an agreement to sublet part of the obligation* owed under the principal contract. It is irrefutably clear that this question is answered affirmatively here, for Annocki concedes

that a subcontract *existed* between Myers and Casper. In Davis v. City of Philadelphia, Trustee, 153 Pa. Superior Ct. 645, 35 A.2d 77 (1943), plaintiff (Davis) argued in a similar fashion to Annocki, that because the subcontract in Davis generated no pecuniary profit to his employer such agreement was void for lack of consideration, and therefore that the "subcontract" requirement of McDonald had not been met. The court, speaking through Judge Baldrige, disagreed with the legal argument propounded by Davis, stating:

*"All that the act by its terms requires in this connection is a sub-contract.* It would be a narrow construction indeed to hold that the sub-contract must necessarily involve a pecuniary profit to the subcontractor, or, in other words, to inquire into the adequacy of the consideration between the parties as a prerequisite to the contractual relationship." Id. at page 652. (Italics supplied.)

It is plain to us that the instant factual situation meets the test enunciated in Davis, supra, and that Annocki's arguments, as to the effect of alleged invalidity of the subcontract, upon the question of whether Myers was a "statutory employer," are wholly without merit.

We must additionally state that even if the test were expressed as whether such subcontract is a valid one, we would still hold Myers to be a "statutory employer." Annocki asserts that any subcontracts by Myers were required to be made, under the principal contract, only with the written approval of the City, citing the Standard Contract Requirements of the principal contract. Page 6, paragraph 27 of the Standard Contract Requirements, states in pertinent part that "No portion of the work shall be sublet without the approval of the Engineer, *unless* in the opinion of the Engineer he is reliable and responsible and competent

to perform the work in compliance with the Contract Document." (Italics supplied.) Section C of the 'Special Conditions' of the Standard Contract Requirements, page C-3 paragraph 5, makes all subcontractors subject to written approval by the department.

There was no showing at trial of written approval by the City of the subletting agreement here. Conversely, though, the record discloses that: an agreement has been proved; the City architect, knowing of such subcontracting agreements, approved *payments* to the subcontractors (R-20); and there was *no* showing that the subletting agreement was ever *disapproved by* the City. We conclude that a valid subcontract thus arises by implication in such circumstances, and that defendant Myers was the "statutory employer" of plaintiff Annocki at the time of Annocki's injury.

In light of the foregoing discussion, and upon consideration of the applicable statutory and case law, we accordingly enter the following

## ORDER

And now, to wit, this April 6, 1973, it is hereby ordered, adjudged and decreed that:

1. Defendant, George Myers Company, has met all criteria required by section 203 of the Pennsylvania Workmen's Compensation Act, 77 PS §52, and by the case of McDonald v. Levinson Steel Company, 302 Pa. 287, 153 Atl. 424 (1930), and was the "statutory employer" of plaintiff Joseph Annocki, at the time of the accident alleged to have caused plaintiff's injuries.

2. This suit in trespass is therefore barred, there being no common law tort liability against George Myers Company, and plaintiff is accordingly left to his statutory remedies as provided under the Pennsylvania Workmen's Compensation Act, 77 PS §1, et seq.