## Stipanovich v. Westinghouse Electric Corporation, Appellant.

Argued April 11, 1967. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ.

*Frederick N. Egler,* with him *John J. Kennedy, Jr.,* and *Egler, McGregor & Reinstadtler,* for appellant.

*Joseph M. Maurizi,* with him *Suto, Power, Balzarini & Walsh,* for appellee.

OPINION BY HOFFMAN, J., June 16, 1967:

The question for us to determine in the instant case is whether Westinghouse Electric Corporation (Westinghouse) was a statutory employer of appellee, Daniel Stipanovich, under the provisions of The Pennsylvania Workmen's Compensation Act. Before setting forth the facts in this case, however, we consider it advisable to review the applicable principles of law.

The status of statutory employer was created under §203 of the Workmen's Compensation Act which provides: "An employer who permits the entry upon premises occupied by him or under his control of a laborer or an assistant hired by an employe or contractor, for the performance upon such premises of a part of the employer's regular business entrusted to such employe or contractor, shall be liable to such laborer or assistant in the same manner and to the same extent as to his own employe." Act of June 2, 1915, P. L. 736, art. II, §203, as amended, 77 P.S. §52.

The purpose of this provision was set forth in *Qualp v. James Stewart Co.,* 266 Pa. 502, 509, 109 A. 780, 782 (1920): "The legislature wanted to definitely fix some responsible party with the obligation of paying compensation to injured workmen, and the party selected was the first whose duty it was to assume control of the work. It selected the first in succession from the owner, believing the owner would contract with none but responsible persons. He was the first in the field and in the contracting scheme of work, the head of the endeavor, the person to whom an employee would naturally look. . . . The Act intended to throw the burden on the man who secured the original contract from the owner to the end that employees of any

degree doing work thereunder might always be protected in compensation claims."

Soon thereafter, however, the statutory employer provision, which had been enacted for the purpose of extending workmen's compensation coverage to employees whose immediate employers were not covered, was seized upon by employers as a possible defense against common law negligence liability.

In recognition of this development, the Supreme Court, in *McDonald v. Levinson Steel Co.*, 302 Pa. 287, 295, 153 A. 424, 426 (1930), set forth five strict requirements under §203 of the Act which an employer must meet to establish that he is a statutory employer, and thus avoid liability at common law. They are: "(1) An employer who is under contract with an owner or one in the position of an owner. (2) Premises occupied by or under the control of such employer. (3) A subcontract made by such employer. (4) Part of the employer's regular business entrusted to such subcontractor. (5) An employee of such subcontractor."

With this background in mind, we now turn to the facts in the instant case.

Westinghouse was under a contract with the Atomic Energy Commission to engage in research and development in matters pertaining to atomic energy at the Bettis Atomic Power Laboratory. Pursuant to that agreement, Westinghouse had the use and control of the Laboratory which was owned by the United States government.

In 1961, Westinghouse entered into a contract with the Eichleay Corporation for the "renovation, relocation and installation of machinery and services to provide for consolidation of the Bettis and Clairton Sites of the Bettis Atomic Power Laboratory." Stipanovich, an employee of Eichleay, was injured while engaged in the movement and placement of certain items of

equipment and machinery in the machine shop at the Bettis Laboratory.

Stipanovich brought an action in trespass alleging that his injuries resulted from Westinghouse's negligence. Westinghouse denied such liability on the ground that it was a statutory employer under the Workmen's Compensation Act and that, accordingly, Stipanovich should be limited to his rights under that Act.

The case came on for trial before Honorable RALPH H. SMITH, JR., of the Court of Common Pleas of Allegheny County. During the course of the trial, the parties agreed that Stipanovich was entitled to $8750.00, if Westinghouse was not a statutory employer. The parties then asked the lower court to determine this issue as a question of law, based solely on Westinghouse's contracts with the Atomic Energy Commission and Eichleay.

The lower court, sitting en banc, held that Westinghouse had failed to satisfy the fourth requirement set out in *McDonald,* i.e., that the work to be performed by Eichleay be part of Westinghouse's regular business. The lower court stated: "The work which the plaintiff was performing at the time of his injury was the type of regular business that his employer, Eichleay, had contracted to perform; that is, the movement and relocation of industrial machinery. Defendant, Westinghouse, was not engaged in the regular business of moving and relocating machinery, but rather was engaged in the research, development and design of nuclear reactors and atomic power. . . ."[1]

On appeal, however, Westinghouse argues that the employer's "regular business," within the meaning of the Workmen's Compensation Act, includes whatever

---

[1] The lower court also held that Westinghouse had failed to establish that it had the required degree of occupancy or control. It further held that Westinghouse was "in the position of an owner," not in the position of an employer.

obligation it has assumed by contract. See *Qualp v. James Stewart Company,* supra. Westinghouse next points out that it has assumed the following obligations under its contract with the Atomic Energy Commission: "Article IX, Section 2a provides: 'Westinghouse shall take all reasonable measures in accordance with applicable regulations and with policies and procedures developed by mutual agreement between Westinghouse and the Commission, or in the absence of any of the foregoing in accordance with sound industrial practice, to protect from loss or damage and shall, subject to the provisions of Section 5 of this Article IX, keep in good operating condition and repair all such Government property.' "

Article IV—General Administration. 1. Westinghouse, to the best of its ability, in accordance with the provisions of this contract, shall be responsible for the administration of the program covered by this contract, and shall provide the necessary personnel and do all things required for the efficient and successful prosecution of the work in accordance with good industrial practice.

Based on these provisions, Westinghouse concludes as follows: "When Westinghouse has the obligation as set out above to operate the facility in accord with good industrial practices, to keep in good operating condition and repair all such property and to minimize danger from all hazards to property, then the movement and placing of equipment in the buildings of the Government facility is part and parcel of the execution of that obligation. It is simply good husbandry. It is part of what Westinghouse is compelled to do in order to carry out in full the terms of its contract with the Government. It is this element of compulsion that makes Westinghouse the statutory employer of Daniel Stipanovich."

We do not consider the extent to which obligations assumed by an employer under contract affect his status under the Workmen's Compensation Act. We hold that Westinghouse is not a statutory employer because it has failed to establish that it was, in fact, obliged by contract to perform the activity in which Eichleay was engaged at the time of the accident.

This case is very similar to *Jamison v. Westinghouse Electric Corporation,* 375 F. 2d 465 (1967), decided March 28, 1967 by the United States Court of Appeals for the Third Circuit. That case involved precisely the same contract and subcontract which are presently under consideration by us. In *Jamison,* the plaintiff's decedent was a painter, employed by Eichleay Corporation, who fell to his death when the scaffold on which he was standing collapsed while he was painting a building at the Bettis Atomic Laboratory. The District Court in that case had submitted an interrogatory to the jury on the issue of statutory employment. The jury found that Westinghouse was not such a statutory employer. On appeal, the single question presented to the Court of Appeals was whether the evidence required the conclusion as a matter of law that Westinghouse was decedent's statutory employer.

In its opinion, the Court of Appeals, after discussing generally the requirements of a statutory employer, stated the following which is directly pertinent to our case:

"We need not, however, rest our decision on the ground that Westinghouse would not be the statutory employer even if decedent was engaged in an activity which had been imposed on it by its contract with the Atomic Energy Commission, because the activity was not part of Westinghouse's regular business. For the record does not require a finding that the activity in which decedent was engaged was in fact part of West-

inghouse's obligations under the contract with the Atomic Energy Commission.

"The two provisions upon which Westinghouse most strongly relies are inconclusive. Article IX, §2a, which deals with the duty of Westinghouse to protect the government property from loss or damage, requires it only to take 'all reasonable measures' to do so, but even this is limited to following 'acceptable regulations and . . . policies and procedures' mutually agreed upon by Westinghouse and the Atomic Energy Commission. No such regulations or policies or procedures have been shown. The section then goes on to provide that in the absence of such standards, Westinghouse should act 'in accordance with sound industrial practice to protect [the government property] from loss or damage.' It provides further that Westinghouse 'shall, subject to the provisions of Section 5 of this Article IX, keep in good operating condition and repair all such government property.' Section 5 of Article IX modifies this last requirement by exempting Westinghouse from all loss or damage which does not result from its willful misconduct or lack of good faith. This, of course, suggests a narrower duty than might otherwise be imposed by Article IX, §2a. In any event, Westinghouse introduced no evidence to prove whether the painting in question was 'in accordance with sound industrial practice,' or was required in order to keep the premises 'in good operating condition and repair.' What testimony there is relating to the purpose behind the painting is fragmentary. . . . The sparsity of the evidence relating to the purpose for which the painting was performed and the absence of evidence as to whether it was in accord with sound industrial practices or was required in order to keep the premises in good operating condition and repair, as Westinghouse's contract required, forbid us from rejecting the jury's con-

clusion that Westinghouse was not the statutory employer of decedent."

Unlike the *Jamison* case, we are not here reviewing a jury's finding. Nonetheless, the above decision of the Circuit Court is most persuasive. There is nothing in our record which reflects why Westinghouse decided to consolidate the two sites of the Laboratory. Westinghouse's contention that this consolidation arose from its contractual obligations to operate the facility in accord with good industrial practices, to keep the premises in good operating condition and to minimize danger from all hazards to property is in no way established by reference to the contracts themselves.

In short, Westinghouse has failed to meet its burden of proving the existence of a statutory employer relationship, because there is no evidence to establish that Westinghouse was ever obliged under its contracts to perform the work undertaken by Eichleay. Perhaps, had Westinghouse offered further evidence, it might have sustained this burden. The contracts alone, however, are neither so clear nor free from doubt as to obviate proofs that were never offered.

Both the Supreme Court in *McDonald* and the Court of Appeals in *Jamison* recognized the very great care which must be exercised before allowing an employer to avoid his liability at common law by asserting that he is a statutory employer. Section 203 of the Workmen's Compensation Act, which was designed to extend benefits to workers, should not be casually converted into a shield behind which negligent employers may seek refuge. We hold that the inconclusive contracts relied upon by Westinghouse do not warrant our finding that Westinghouse was a statutory employer.

Judgment affirmed.