512 F.2d 209
 George HATTERSLEY and Susanne Hattersley, husband and wife
v.
Theodore BOLLT, Individually and trading as "National
Properties" and/or"National Properties, Inc." and
International Properties, Inc., and Fred
I. Liebmann, A.I.A.
v.
LAZOVITZ, INC., appellant in Nos. 74-1043 and 74-1044, et
al., Third-Party Defendants.
 Nos. 74-1043, 74-1044.
 United States Court of Appeals,
Third Circuit.
 Argued Nov. 14, 1974.
Decided Feb. 19, 1975.
As Amended March 24, 1975.
 
 John J. O'Brien, Jr., Philadelphia, Pa., for appellant.
 T. E. Byrne, Jr., Mark D. Alspach, Krusen, Evans & Byrne, Philadelphia, Pa., for appellee.
 Before VAN DUSEN, HUNTER and GARTH, Circuit Judges.
 OPINION OF THE COURT
 VAN DUSEN, Circuit Judge.
 
 
 1
 This is an appeal from a judgment of contribution[1] entered against appellant-third-party defendant, Lazovitz, Inc., and in favor of appellee-third-party plaintiff, Bollt. Bollt, the owner of an office building,[2] joined Lazovitz, which was acting as general contractor in the renovation of Bollt's property,[3] in a personal injury action brought by Hattersley, an employee of a subcontractor to a subcontractor, and Hattersley's wife.[4] Hattersley was injured on September 30, 1970, when he fell into an elevator shaft just as the elevator was passing the floor from which he fell. The elevator was being operated by Daniel Small,[5] an employee of Bollt.
 
 
 2
 Before the case was submitted to the jury, Bollt agreed to pay the Hattersleys $500,00. in damages, should the jury return a verdict for the Hattersleys. Lazovitz neither knew of this agreement nor concurred in it.
 
 
 3
 The case was submitted to the jury on special interrogatories, pursuant to F.R.Civ.P. 49(a).[6] On September 18, 1973, the jury reached a verdict in favor of the Hattersleys, finding both Bollt and Lazovitz negligent. A judgment was filed on November 26, 1973.[7]
 
 
 4
 I. Appealability of Judgment Filed November 26, 1973
 
 
 5
 Appellee Bollt contends that the judgment filed November 26, 1973, was not a final judgment appealable under 28 U.S.C. § 1291 because it "leaves some matter involved in the controversy in the District Court still open for further hearing and determination before the ultimate rights of the parties are conclusively adjudicated ...." Brief for Appellee at 3.[8]
 
 
 6
 The district court entered a "Civil Judgment" phrased in substantially the form prescribed by this court in Smith v. Whitmore, 270 F.2d 741, 746 (3d Cir. 1959).[9] In accordance with the jury verdict, Lazovitz was adjudged a joint tortfeasor, liable in contribution to Bollt for any amount which Bollt should pay the Hattersleys "in excess of the sum of two hundred fifty thousand ... dollars." The district court rejected Bollt's contention that Lazovitz was liable on a contract of indemnification for any amount "over and above the amount which Lazovitz, Inc. might be required to pay by way of contribution ...." 208a. This judgment does not, in terms, assess the precise monetary amount owed by Lazovitz to Bollt. Moreover, it conditions Bollt's right to payment from Lazovitz upon Bollt's prior payment of the judgment to the Hattersleys. Nevertheless, because the judgment fixes Lazovitz's ultimate liability and clearly establishes the parameters of that liability, it is a final, appealable order.[10] The Supreme Court of the United States has emphasized that "the requirement of finality is to be given a 'practical rather than a technical construction.' " Gillespie v. United States Steel, 379 U.S. 148, 152, 85 S.Ct. 308, 311, 13 L.Ed.2d 199 (1964).
 
 
 7
 Where the practical effect of a judgment or order is final and only requires a ministerial act to implement it, such judgment or order is appealable under 28 U.S.C. § 1291. Since the effect of this district court judgment settles "the primary issue then existing between the parties," Massachusetts Casualty Ins. Co. v. Forman, 469 F.2d 259, 260 (5th Cir. 1972), and determines the rights and equities between the parties, it is a final judgment, notwithstanding any provision for future determination of the actual amount of recovery. Durkin v. Mason & Dixon Lines, 202 F.2d 425 (6th Cir. 1953). In Forman, supra, the court held final an order of the district court which enforced a settlement between the insurer and the insured, even though the efficacy of the order "was conditioned on surrender of the policy and delivery of the check." 469 F.2d at 260. Durkin, supra, allowed an appeal under 28 U.S.C. § 1291 from an order which granted recovery in an amount to be later determined. And in Friedman v. Wilson Freight Forwarding Co., 3 Cir., 320 F.2d 244, 247 (1963), this court clearly implied that a Smith v. Whitmore judgment effectively determined the parties' rights and was appealable, using, inter alia, this language:
 
 
 8
 "Steinman's basic legal obligation of contribution had already been properly determined, subject only to the payment of money by Wilson to the plaintiff. All that followed was administration of that basic decision. In this process, different from a trial, the court could assure itself in any reasonable way that Wilson had paid the plaintiff and, therefore, that the matter was ripe for an unqualified order that Steinman reimburse Wilson. The filing of the plaintiff's receipt and release as part of the post-judgment record was a normal and proper way of supplying the court with that assurance.
 
 
 9
 "... the judgment was ... at most subject to vacation upon a subsequent showing of mistake (or) misrepresentation ...."
 
 
 10
 The judgment now appealed from has determined the rights of the parties by adjudging Lazovitz's status as a joint tortfeasor and Bollt's right to contribution from Lazovitz under the procedure used in Friedman. The amount of that liability will be subject to arithmetic computation when Bollt pays more than half the judgment. For example, upon the mere filing of a praecipe evidencing full payment of the judgment, Bollt is entitled to collect from Lazovitz $250,000.[11] Where actual payment awaits only a future ministerial order, finality is not lacking. See United States v. 1,431.80 Acres of Land, 466 F.2d 820, 822 (8th Cir. 1972). Since Bollt's claim against Lazovitz has thus been effectively established "both as to liability and as to amount," the judgment is a final one.[12] Cf. United States v. Estate of Pearce, 498 F.2D 847, 848-49 (3d Cir. 1974).
 
 
 11
 We recognize that a subsequent appeal is possible under the procedure contemplated by Friedman, supra, challenging a district court ruling on an allegation that the praecipe containing a representation of payment by the third-party plaintiff is inaccurate.[13] However, we believe such appeals are unlikely and will be infrequent. Any departure from the strictest construction of "final decisions" appealable under 28 U.S.C. § 1291 may encourage parties to appeal from orders of barely arguable finality. Multiplications of such appeals would doubtless result in much "useless expenditure." 9 J. Moore, Federal Practice, P110.12 at 152 (2d ed. 1973). We are, however, of the opinion that, in this situation, the possibility of such appeals is outweighed by "the danger of denying justice by delay." Dickinson v. Petroleum Conversion Corporation, 338 U.S. 507, 511, 70 S.Ct. 322, 324, 94 L.Ed. 299 (1950).
 
 
 12
 If this appeal is disallowed, Lazovitz will be unable to raise the issues which it urges here until such time as Bollt files a praecipe and sues on the resulting judgment against Lazovitz as third-party defendant. The Hattersleys have at least 20 years to collect their judgment from Bollt. If we hold the "Civil Judgment" non-final, Bollt would presumably have another 20 years to seek contribution from Lazovitz.[14] The time thus elapsing prior to a final ruling in this court on the issues determined by the district court judgment could easily be lengthy. Such a delay could result if the Hattersleys dallied in seeking to collect their judgment, if they were unable to collect it speedily, or if Bollt were to pay in installments over a period of years. Lazovitz's ability to raise its defense against Bollt in a trial granted years later as a result of such a delayed appeal would be handicapped with the passage of time and the consequent loss of evidence, as through the dimming of witnesses' memories, loss of records, or death of witnesses. By contrast, delay would pose no barrier to Bollt's suing on the judgment unless he delayed beyond the long 20-year limitation period.[15]
 
 
 13
 For the foregoing reasons, we will deny Bollt's motion to dismiss the appeal.[16]
 
 
 14
 II. Bollt's post-trial motion for rehearing and reconsideration
 
 
 15
 Neither at oral argument nor in his brief did Bollt request a remand of this case so that the district court could determine Bollt's post-trial motion.[17] We have not, however, overlooked decisions in other courts of appeals which provide for remand to the district court for decision of a timely post-trial motion filed in the district court during the pendency of an appeal.[18] We believe that the procedure, recommended in 6A J. Moore, Federal Practice, P 59.09(5) at 59-223-59-229 (2d ed. 1974), is desirable.[19] If a timely motion under F.R.Civ.P. 59 has been filed in the district court after the filing of a notice of appeal, the court of appeals should be moved to "... remand the case to the district court so that the latter court may pass on the motion ... that was timely made there." Id. at 59-223.
 
 
 16
 "(A) showing of substantial merit underlying the motion for new trial should be made to the appellate court in order to satisfy the latter that the trial court would be justified in granting a new trial.
 
 
 17
 "(Alternatively) (i)f the district court indicates that it will grant a new trial, the movant should then make a motion in the appellate court for a remand of the case in order that the district court may grant the motion. Careful practice dictates that the movant suggest to the court within appeal time that this procedure has been adopted by him and that further proceedings on appeal, if any appear imminent, should be stayed until the lower court has time to hear the motion.
 
 
 18
 "(T)he party desiring to move for new trial, if not the party that has taken the appeal, should consider whether in addition to moving for new trial (or for alteration or amendment of judgment) he also desires to take an appeal. If so, he should perfect a cross-appeal within the time for appeal as computed from the entry of judgment." Id. at 59-224-59-229.
 
 
 19
 In this case, Bollt has made no effort to secure from the district court a determination of the likelihood that he will prevail on the merits of his post-trial motion for reconsideration and rehearing.[20] See Asher v. Harrington, supra. On the facts of this record, we hold that any attempt by either party to secure a ruling on this post-trial motion prior to disposition of this appeal would be untimely.
 
 
 20
 Furthermore, we note that Bollt's failure to file a cross-appeal precludes our consideration of the issues raised in that motion. See Swarb v. Lennox, 405 U.S. 191, 200-01, 92 S.Ct. 767, 31 L.Ed.2d 138 (1972).
 
 III. The Merits
 A.
 
 21
 Lazovitz argues that the evidence is insufficient to support the judgment of its liability as a joint tortfeasor in the potential amount of $250,000.[21] The amended third-party complaint, filed November 18, 1971, as Document 26, set forth a tort theory of liability and averred that Lazovitz was either "alone liable to the plaintiffs or liable over to the defendants and third-party plaintiffs (Bollt), or jointly or severally liable thereon with the defendants and third-party plaintiffs ...."[22] Lazovitz contends, however, that the evidence actually adduced could establish only sole, not joint, liability on its part. We disagree with this contention. The record indicates that Bollt continued in possession and operation of the One East Penn Square Building, which functioned normally during the construction of the two additional floors. Deposition of T. Bollt at 12-15, 17-28, 29-46. L. C. Raymond, the superintendent of the building and an employee of Bollt, testified that maintenance and other services were furnished the building's tenants while the renovation was proceeding. See, e. g., N.T. 568, 573. Only Bollt employees were authorized to operate the elevators. Small, a Bollt employee, was operating the elevator at the time of Hattersley's injury. N.T. 555, 573-75, 608. It was also established that another Bollt employee, S. J. Lattimore, was in charge of shutting down the elevators when requested to do so by "one of the contractors working on the job." N.T. 581, 564-67. In spite of extensive testimony pointing to Bollt's control of the elevator operations, there was also testimony that Lazovitz had the ultimate responsibility both for barricading the elevators and for having the elevators shut down when the barricades were not in place. N.T. 132, 137, 262-63, 333, 337-38, 564, 574, 579, 594, 602-03. Bollt's superintendents were not responsible in any way for the construction site. Deposition of T. Bollt at 17-18, 46-47. We also note that counsel for Lazovitz, in arguing his motion for a directed verdict, contended that "the evidence shows that Bollt was at least partly negligent ...." N.T. 618. We believe this evidence is sufficient to support the jury's verdict that both Bollt and Lazovitz were negligent and that the negligence of each party was a substantial factor causing Hattersley's injuries.
 
 
 22
 Nevertheless, we vacate the judgment of the district court because we agree with Lazovitz's assertion that its liability in contribution must be limited to the amount of the workmen's compensation award due Hattersley under the Pennsylvania Workmen's Compensation Act.
 
 B.
 
 23
 Lazovitz's points for charge 18, 19, 28, 31 and 33 requested the trial court to charge the jury that Lazovitz was a statutory employer under 77 Purdon's Pa.Stat.Ann. § 52.[23] Lazovitz did not ask that the statutory employer issue be decided as a question of fact by the jury, nor did it request that the factual elements of the statute's definition of "employer" be determined as a question of fact. Cf. Jamison v. Westinghouse Electric Corp., 375 F.2d 465, 468 (3d Cir. 1967); Hayes v. Philadelphia Transportation Co., 312 F.2d 522, 524 (3d Cir. 1963). The trial court correctly declined to charge the jury as requested, since, under Pennsylvania law,[24] the employer-employee relationship is not to be submitted to the jury. Socha v. Metz, 385 Pa. 632, 641, 123 A.2d 837, 842 (1956). The court erred, not in its conclusion that the statutory employer question was a legal one,[25] but in its legal conclusion that 77 P.S. § 52 was inapplicable to limit Lazovitz's liability. Both the amended complaint and the uncontradicted evidence compel the conclusion that Lazovitz is a statutory employer under 77 Purdon's Pa.Stat.Ann. § 52.
 
 
 24
 Pennsylvania courts have interpreted the statute as setting forth "five strict requirements ... which an employer must meet to establish that he is a statutory employer ...." Stipanovich v. Westinghouse Electric Corp., 210 Pa.Super. 98, 101, 231 A.2d 894, 896 (1967). These are:
 
 
 25
 "(1) An employer who is under contract with an owner or one in the position of an owner.
 
 
 26
 "(2) Premises occupied or under control of such employer.
 
 
 27
 "(3) A subcontract made by such employer.
 
 
 28
 "(4) Part of the employer's regular business entrusted to such subcontractor.
 
 
 29
 "(5) An employee of such subcontractor."
 
 
 30
 McDonald v. Levinson Steel Co., 302 Pa. 287, 295, 153 A. 424, 426 (1930); Pape v. Smith, 227 Pa.Super. 80, 83, 323 A.2d 856, 857 (1974).
 
 
 31
 Only the second element-occupancy or control of the premises by Lazovitz-is disputed on appeal.[26] See Brief for Appellee at 7-8. Bollt argues that Lazovitz cannot qualify as a statutory employer because the evidence established Bollt's possession of the premises. See III-A, supra, and N.T. 677. However, it is the right to either occupancy or control that determines Lazovitz's status. See Hayes, supra, 312 F.2d at 524; Girardi v. Lipsett, Inc., 275 F.2d 492, 497 (3d Cir.), cert. denied, 364 U.S. 821, 81 S.Ct. 56, 5 L.Ed.2d 50 (1960); Davis v. City of Philadelphia, 153 Pa.Super. 645, 650, 35 A.2d 77, 80 (1943). Bollt's possession of the building is fully compatible with Lazovitz's control of the portion of the premises under construction. Indeed, Bollt's amended complaint appears to recognize this compatibility in alleging that the "portion of the premises ..., wherein the plaintiff sustained his injuries, was operated, possessed, maintained and controlled by the third-party defendants ...." At 3. This allegation is fully supported by the evidence. There was uncontradicted testimony that Lazovitz was responsible for barricading the elevators. N.T. 81-82, 132, 262-63, 333, 579, 594, 602-03. Raymond, who was employed by Bollt as building supervisor, testified that Lazovitz was in charge of supervising all construction work, N.T. 561, and that "control of the elevator was basically in the hands of the contractor," Lazovitz. N.T. 564; see also N.T. 343-45. He also testified that he established no procedures for having the elevator operators check whether the shaftways were open on the floors under construction "(b)ecause the job was under the control of the contractor." N.T. 574. Raymond further testified that he had nothing whatever to do with supervising the work; "curiosity" was his sole motivation for visiting the construction site. N.T. 560. S.T. Latimore, hired by Bollt as maintenance superintendent for One East Penn Square, testified that Lazovitz's employee, Low was the job superintendent. N.T. 579. Low himself testified that, although there was no specifically appointed safety man on the site, "everybody" on the Lazovitz staff was responsible for safety. N.T. 590-93. Significantly, there was no testimony that Bollt or his employees were in any way responsible for, or in control of, the job site.
 
 
 32
 Although Lazovitz requested no jury finding on control, such a finding is implicit in the jury's verdict. The district court charged on the question of control as follows:
 
 
 33
 "... a possessor of land who retains and exercises control over work performed by an agent or contractor, may be liable if he fails to use reasonable care in the exercise of that control. However, where the possessor has given up control of the performance of the work and in addition warns the contractor, here Third-Party Defendant Lazovitz, of the existence of any dangerous conditions on the premises of which he has knowledge or should have knowledge, the possessor is not required to warn the contractor's employees of the existence of those dangers.
 
 
 34
 "Third-Party Defendant Lazovitz, Incorporated, owes a duty to George Hattersley to exercise reasonable care under the circumstances to protect Plaintiff George Hattersley from risks of harm of which it, through its agents or employees, has or should have knowledge. This duty, although it is owed to the plaintiff, George Hattersley, may be enforced by Defendant Bollt in a suit against the third-party defendant, Lazovitz, for contribution. You will remember that one of Defendant Bollt's contentions is that if you find Defendant Bollt negligent, and if you find that such negligence was a proximate cause of the accident, then Defendant Bollt is entitled to contribution from Third-Party Defendant Lazovitz because Defendant Bollt contends that Lazovitz was also negligent and that such negligence was a proximate cause of the accident.
 
 
 35
 "I charge you that you must first determine whether or not Third-Party Defendant Lazovitz was in control of some or all of the work[27] being performed at the One East Penn Square Building on the day this accident was happening. You must determine this from the evidence presented by all the parties. Remember, your recollection of the testimony is controlling.
 
 
 36
 "If you find that Lazovitz was in control of some or all of the work, you must next determine whether or not Lazovitz breached a duty which it owed to Plaintiff George Hattersley. Lazovitz, Inc., as general contractor, must provide plaintiff with a safe place to work or must warn him of dangers of which he might not be aware....
 
 
 37
 "If you find that Third-Party Defendant Lazovitz was in control of some or all of the work, and if you find that Third-Party Defendant Lazovitz breached a duty to Plaintiff George Hattersley by either failing to provide George Hattersley with a safe place to work or failing to warn George Hattersley of dangers of which he might not be aware, you may find that Third-Party Defendant Lazovitz was negligent.
 
 
 38
 "Now, if you find that Third-Party Defendant Lazovitz was negligent, then you must consider whether or not such negligence on the part of Lazovitz was a proximate cause of the accident."
 
 
 39
 After deliberating for some time, the jury requested the trial judge to "issue clarifying instructions" on that portion of the charge relating to Lazovitz's liability. N.T. 698. The judge re-charged the jury, inter alia, as follows:
 
 
 40
 "I charge you that you must first determine whether or not Third-Party Defendant Lazovitz was in control of some or all of the work being performed at the One East Penn Square Building on the day this accident was happening. You must determine this from the evidence presented by all the parties. Remember, your recollection of the testimony is controlling.
 
 
 41
 "If you find that Lazovitz was in control of some or all of the work, you must next determine whether or not Lazovitz breached a duty which it owed to Plaintiff George Hattersley. Lazovitz, Inc., as general contractor, must provide plaintiff with a safe place to work or must warn him of dangers of which he might not be aware. This duty on the part of Lazovitz, Inc., exists regardless of any provisions contained in the contract between the defendant, Bollt, and the third-party defendant, Lazovitz.
 
 
 42
 "If you find that Third-Party Defendant Lazovitz was in control of some or all of the work, and if you find that Third-Party Defendant Lazovitz breached a duty to Plaintiff George Hattersley by either failing to provide George Hattersley with a safe place to work or failing to warn George Hattersley of dangers of which he might not be aware, you may find that Third-Party Defendant Lazovitz was negligent."
 
 
 43
 In light of the court's charge, the jury must necessarily have found Lazovitz "in control of some or all the work" in order to find Lazovitz negligent. Bollt, however, could be found negligent without any similar finding of control. See N.T. 677-78, 679. Thus the jury findings are consistent with the testimony recounted supra; both findings and testimony point to Lazovitz's control of the floors under construction.
 
 
 44
 The evidence in this case is remarkably similar to that adduced in Coyne v. Marquette Cement Mfg. Co., 254 F.Supp. 380 (W.D.Pa.1966). The district court in Coyne found the requisite "control" where the contractor "was in actual control of the premises and the safety of the workmen" and where the contractor's supervisor "was in actual charge of (the subcontractor's) employees ... and issued directions and orders to them." The opinion in Coyne further noted that the contract there, like the one in the present case,[28] provided for the contractor to "take all necessary precautions for the safety of employees ... erect and properly maintain ... all necessary safeguards (and provide a supervisor)." 254 F.Supp. at 386, 382. We agree with the court in Coyne that such evidence suffices to establish, as a matter of law, that a contractor is a statutory employer.
 
 
 45
 As a statutory employer, Lazovitz can be liable in contribution to Bollt for no more than the amount of the workmen's compensation award due Hattersley.[29] O'Neill v. United States, 450 F.2d 1012, 1016, 1018 (3d Cir. 1971); Elston v. Industrial Lift Co., 420 Pa. 97, 216 A.2d 318 (1966); Brown v. Dickey, 397 Pa. 454, 155 A.2d 836 (1959); Maio v. Fahs, 339 Pa. 180, 14 A.2d 105 (1940). Since Lazovitz's liability is thus limited, we need not consider Lazovitz's other contentions as to the damages.[30]
 
 
 46
 For the foregoing reasons, Bollt's motion to dismiss will be denied; the judgment of the district court will be vacated; and the case will be remanded for such further proceedings consistent with this opinion as may be necessary, including disposition of Bollt's Rule 59(e) motion (see note 17 above) and entry of a revised, final judgment. Costs shall be taxed against appellee Bolt.
 
 
 
 [1]
 The judgment filed November 26, 1973, appears in the district court file as Document No. 192 and is worded as follows (207a-209a):
 "CIVIL JUDGMENT
 "And Now, to wit, this 18th day of September, 1973, in accordance with the verdict, and the jury's answer to the interrogatories, it is ORDERED that judgment be and the same is hereby entered in favor of plaintiffs George Hattersley and Susanne Hattersley and against the defendants/third party plaintiffs Theodore Bollt, individually and t/a National Properties and/or National Properties, Inc., and International Properties, Inc., and Theodore Bollt, individually and t/a National Properties and International Properties Ltd., Inc. in the sum of FIVE HUNDRED THOUSAND ($500,000) DOLLARS together with costs; it is further ORDERED AND ADJUDGED that the defendants/third party plaintiffs Theodore Bollt, ... and the third party defendant Lazovitz, Inc. are joint tortfeasors and that the right of contribution exists in favor of the said Theodore Bollt, ... and against the said Lazovitz, Inc. and that the said Theodore Bollt, individually ... may hereafter have judgment against the said Lazovitz, Inc. for the amount which Theodore Bollt, ... prove they have paid to the plaintiffs George Hattersley and Susanne Hattersley in excess of the sum of TWO HUNDRED FIFTY THOUSAND ($250,000) DOLLARS.
 "The Court further finds that the FIVE HUNDRED THOUSAND ($500,000) DOLLARS amount which was agreed upon between the plaintiffs George Hattersley and Susanne Hattersley, and defendants/third party plaintiffs Theodore Bollt, individually ... as the amount of the verdict was fair and reasonable.
 "The Court has interpreted the indemnification contract marked Exhibit 'DB-3,' and after having construed that contract, the Court finds that the defendants/third party plaintiffs Theodore Bollt, individually ... are not entitled to a judgment against third party defendant Lazovitz, Inc. for indemnification over and above that amount which Lazovitz, Inc. might be required to pay by way of contribution to Theodore Bollt, individually.
 * * *
 "The Court further finds that defendants/third party plaintiffs Theodore Bollt, individually ... are not entitled to a judgment against Lazovitz, Inc. for indemnification at law.
 "AND IT IS SO ORDERED."
 
 
 [2]
 Bollt was sued individually and trading as National Properties and International Properties Limited, Inc. Bollt was a trustee under a declaration of trust, wherein the trustees held legal title to One East Penn Square Building for the benefit of parties to a joint venture. Bollt was a joint venturer who also acted as Managing Agent for the venture
 
 
 [3]
 The work of renovation involved the installation of new floors just above the ground level in this 23-story building. The ground level had originally been a bank with a cathedral ceiling. It was into this cathedral ceiling space that new floors were being installed when the plaintiff was injured
 
 
 [4]
 There was also a contract between Bollt and United Elevator Company; work on this contract was being done at the time of the accident. All parties to the action other than plaintiffs, Bollt and Lazovitz had been dismissed prior to the jury verdict
 
 
 [5]
 Although Lazovitz's brief refers to "Donald Small," the transcript identifies the elevator operator as "Daniel Small." See, e. g., N.T. 554-55
 
 
 [6]
 The special questions and jury answers were:
 "1. (A) Do you find that defendant Bollt trading as National Property was negligent?
 Yes
 (B) Do you find that defendant International Properties, Ltd. through its agents and employees, was negligent?
 Yes
 (Answer both Parts)
 * * *
 "2. (A) Do you find that the negligence of the defendant Theodore Bollt trading as National Properties was a substantial factor in bringing about plaintiff George Hattersley's injuries?
 Yes
 (B) Do you find that the negligence of International Properties, Ltd. through its agents or employees, was a substantial factor in bringing about plaintiff George Hattersley's injuries?
 Yes
 (Answer both Parts)
 * * *
 "3. (A) Was plaintiff George Hattersley guilty of contributory negligence?
 No
 * * *
 "4. (A) Do you find that the third party defendant Lazovitz, Inc. was negligent?
 Yes
 (B) If your answer to 4(A) is 'Yes' was the negligence on the part of the third party defendant Lazovitz a substantial factor in bringing about plaintiff George Hattersley's injuries?
 Yes"
 
 
 [7]
 This judgment is dated as of September 18, 1973
 
 
 [8]
 During oral argument, counsel for appellee Bollt cited note 10 in Travelers Insurance Company v. United States, 493 F.2d 881 (3d Cir. 1974), as requiring a holding that the November 27, 1973, district court order is not appealable because the exact damages payable by third-party defendant Lazovitz are not stated in that order. However, the Travelers case did not involve an appeal from a judgment entered both in the principal action and in a third-party claim brought under F.R.Civ.P. 14. The August 1971 order in Travelers was entered in a civil action for contribution or indemnification, brought subsequent to entry of final judgment in the basic personal injury action which established the liability of the defendant insurer and the amount of the verdict. There was no specific monetary award against the third-party defendant in the indemnification action. In the present case, however, the district court judgment stated that third-party defendant Lazovitz was liable in contribution for all amounts paid by the defendant which exceeded one-half the $500,000. damages assessed. The clear effect of this judgment (see note 1 above) is that Lazovitz is to become liable for $250,000. of the judgment, unless the plaintiffs fail to collect the entire judgment. For this reason, that case is inapplicable to the record now before this court
 
 
 [9]
 Smith did not, however, specifically consider the appealability of the judgment
 
 
 [10]
 Lazovitz filed two appeals on November 29, 1973: one from the "Civil Judgment" (Document No. 193) and one from the district court's denial of a motion for judgment n. o. v. (Document No. 196). Lazovitz argues that the second appeal is also an appeal from a final judgment of which this court has jurisdiction under 28 U.S.C. § 1291. Since we determine that the first appeal satisfies 28 U.S.C. § 1291 and vacate the November 26, 1973, judgment, we dismiss the second appeal as moot
 
 
 [11]
 See notes 1 and 8, supra
 
 
 [12]
 We reject as without merit Bollt's contention that the "judgment left unresolved the issues in Bollt's third party claim against Lazovitz." Brief for appellee 4-5
 
 
 [13]
 The issues raised on this appeal would recur if Lazovitz attempted to defend against Bollt's demand for payment by denying the existence and extent of liability. The principles of res judicata would apply to minimize any costs entailed in handling such a defense. Moreover, such a case would present a situation no different from that created in the ordinary case where a defendant's liability and the amount thereof are established in a final judgment, but the defendant subsequently seeks to evade payment by relitigating issues central to liability. Such an eventuality does not render a judgment non-final. We note that an appeal by Bollt from the disposition of its Rule 59(e) motion would raise issues unrelated to those urged on this appeal. See note 17 below
 
 
 [14]
 Under Pennsylvania law, a judgment is presumed discharged after 20 years. This presumption is rebuttable. Bolender v. Farm Bureau Mut. Ins. Co., 474 F.2d 1360, 1363 n. 4 (3d Cir. 1973); Smith v. Shoenberger, 176 Pa. 95, 34 A. 954 (1896)
 
 
 [15]
 Bollt could revive the judgment, thus prolonging his time to sue. See Shoenberger, supra, at 95, 34 A. 954
 
 
 [16]
 Alternatively, under Cohen v. Beneficial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), this judgment would appear to be final after "evaluation of the competing considerations underlying all questions of finality-'the inconvenience and costs of piecemeal review on the one hand and the danger of denying justice by delay on the other.' Dickinson v. Petroleum Conversion Corp., 338 U.S. 507, 511, 70 S.Ct. 322, 94 L.Ed. 299 (1950) (footnote omitted)." Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 171, 94 S.Ct. 2140, 2149, 40 L.Ed.2d 732 (1974). See also Samuel v. University of Pittsburgh, 506 F.2d 355 (3d Cir. 1974)
 
 
 [17]
 Lazovitz filed its appeals on November 29, 1973. See note 10, supra. On December 4, 1973, Bollt filed in the district court a timely motion for rehearing and reconsideration. Such motion is equivalent to a motion to alter or amend a judgment under F.R.Civ.P. 59(e). Sonnenblick-Goldman Corp. v. Nowalk, 420 F.2d 858, 859 (3d Cir. 1970). Had the Rule 59(e) motion been filed before Lazovitz filed its notice of appeal, the district court judgment would have lacked finality and an appeal filed subsequent to the motion would have been a nullity. See id. Since the filing of the appeal had lodged jurisdiction in the court of appeals, however, the district court lacked power to decide the motion (Document 198), which it has held in abeyance pending the disposition of the appeal. See Sykes v. United States, 392 F.2d 735, 738 (8th Cir. 1968); 6A J. Moore, Federal Practice, P 59.09(5) at 59-220-59-221 (2d ed. 1974). Cf. Torockio v. Chamberlain Mfg. Co., 456 F.2d 1084, 1085 (3d Cir. 1972)
 
 
 [18]
 Asher v. Harrington, 461 F.2d 890 (7th Cir. 1972); Ryan v. United States Lines Co., 303 F.2d 430 (2d Cir. 1962); Smith v. Pollin, 90 U.S.App.D.C. 178, 194 F.2d 349 (D.C.Cir.1952)
 
 
 [19]
 See also 11 Wright & Miller, Federal Practice and Procedure § 2821 (1973)
 
 
 [20]
 There is authority to support the judgment of the district court that Bollt is not entitled to indemnity under the circumstances presented by this record. See Pennsylvania Railroad Co. v. Erie Avenue Warehouse Co., 302 F.2d 843, 848-50 (3d Cir. 1962); Pittsburgh S. Co. v. Patterson-Emerson-Comstock Co., 404 Pa. 53, 171 A.2d 185 (1961). The contract in Babcock & Wilcox Co. v. Fishback and Moore, Inc., 218 Pa.Super. 324, 280 A.2d 582 (1971), contains different language from the contract in this case due to the deleted words in paragraph 4.18.1 of Exhibit DB-3. We express no opinion on the merits of the contentions of the indemnity issue in the post-trial motion, which are left to determination by the district court on remand
 
 
 [21]
 Lazovitz also asserts that the judgment on joint tort liability is not justified by the verdict, since none of the interrogatories submitted to the jury required a finding of liability as between Lazovitz and Bollt. No such finding was necessary, however, to a determination-clearly made by the jury-that Hattersley's injuries resulted from the negligence of both parties. N.T. 704-06; see 12 Purdon's Pa.Stat.Ann. § 2082. Moreover, we note that neither the points for charge nor the interrogatories proposed by Lazovitz raised the issue of tort liability as between Bollt and Lazovitz any more squarely than did the trial court's interrogatories. Point for Charge 27 does not raise the issue. Proposed interrogatory 21 raised the issue of comparative responsibility only within the context of contractual liability, yet the contractual indemnity theory was not before the jury. N.T. 663-64. For the same reason, points for charge 29-30 and 34-35 were also properly rejected
 
 
 [22]
 See N.T. 511-515; 528
 
 
 [23]
 " § 52. Employers' liability to employee of employee or contractor permitted to enter upon premises
 "An employer who permits the entry upon premises occupied by him or under his control of a laborer or an assistant hired by an employe or contractor, for the performance upon such premises of a part of the employer's regular business entrusted to such employe or contractor, shall be liable to such laborer or assistant in the same manner and to the same extent as to his own employe...."
 
 
 [24]
 See Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)
 
 
 [25]
 In effect, the court's charge on joint tort liability, N.T. 681-82, and the judgment of contribution constituted a determination that Lazovitz was not a statutory employer as a matter of law. There is authority for treating this determination as a legal question. See Jamison v. Westinghouse, supra; Stipanovich v. Westinghouse Electric Corp., 210 Pa.Super. 98, 104, 106, 231 A.2d 894, 897, 898 (1967); Coyne v. Marquette Cement Mfg. Co., 254 F.Supp. 380, 383 (W.D.Pa.1966); Socha v. Metz, supra. But see Hayes v. Philadelphia Transportation Co., supra
 
 
 [26]
 In McDonald v. Levinson Steel Co., 302 Pa. 287, 298, 153 A. 424, 428 (1930), the court stated that the first element was met where there was a "contract to build for the owner" (emphasis supplied). Lazovitz contracted with National Properties, "a fictitious name" under which Bollt did business, see deposition of Theodore Bollt at 3. Since National Properties contracted in its capacity as agent for the joint venture which owned the building, id. at 10, Lazovitz contracted to build "for the owner."
 The third and fifth elements enumerated in McDonald, supra, were established by the parties' stipulation:
 "... that Lazovitz, Incorporated, entered into a subcontract with a company known as Spann Engineering. Under that subcontract, Spann Engineering was to supply and erect in place the metal decking and the U-clips which have been referred to in the testimony here. Spann Engineering, in fact, supplied the materials and on an oral order or request, engaged Thomas Lindstrom & Co., the employer of Mr. Hattersley, to do the actual work of installation." N.T. 611-12.
 Jamison v. Westinghouse Electric Corp., supra, establishes that the fourth element is also met. In discussing this requirement, this court noted that:
 "... the Pennsylvania courts have indicated that the statutory requirement is satisfied wherever the subcontracted work was an obligation assumed by a principal contractor under his contract with the owner. A clear illustration is the case of a general construction contractor all of whose obligations are fixed in the contract with the owner and who obviously will subcontract various portions of his contractual obligation. In such a case, while the principal contractor may not directly perform a particular part of his general obligation, choosing instead to subcontract it, nevertheless he may accurately be said to be in the business of assuming the broad obligations of a principal contractor and therefore equally to be in the business of letting out portions of his undertaking to others to perform on his behalf. To construe the subject matter of the subcontract as outside the principal contractor's regular business would be to reduce the scope of his undertaking as a principal contractor. It would, moreover, permit evasion of the purpose of the statutory provision by denying employees workmen's compensation protection in a numerous class of cases which has wide ramifications."
 375 F.2d at 468-69 (footnote omitted).
 
 
 [27]
 Although the phrase "some or all of the work" does not clearly identify the area where Hattersley was injured, there was no objection to this language by counsel for any of the parties at the conclusion of the charge. See F.R.Civ.P. 51
 
 
 [28]
 See Deposition of T. Bollt at 54; paragraphs 10.1.1, 10.2.1 and 10.2.2 of the contract between Bollt and Lazovitz. See Document 198
 
 
 [29]
 Strong public policy underlies the Pennsylvania cases limiting contribution liability for statutory employers. The Brown court characterized the Workmen's Compensation Act as "an expression of the legislative will that an employer's liability, in a case involving injury to an employee during the course of his employment, is strictly limited to the amount of the workmen's compensation award. Since the employer has been deprived by the Act of his common law defenses, such as contributory negligence, assumption of the risk and the fellow servant rule, it would be grossly inequitable to impose a common law liability upon him in the form of a judgment of contribution without permitting him to interpose any defenses." 397 Pa. at 459, 155 A.2d at 838. The court further noted that the tortfeasor seeking contribution was not wronged by this rule since contribution is based, not on any right of the tortfeasor, but "on the equitable principle that the plaintiff should not recover twice for the same wrong." Id. at 462-63, 155 A.2d at 840
 
 
 [30]
 See, e. g., 12 Purdon's Pa.Stat.Ann. § 2083(3)